## JACOBS vs. ALLEN and PAXSON.

An assignment by an insolvent debtor, of his property, in trust for the benefit of his creditors, although it declares that the trustees shall not be answerable for the acts, neglects or defaults of any attorney or agent that they may appoint, nor for any misfortune, loss or damage which may happen without their willful default, is not fraudulent and void on its face, if that provision is followed by an express covenant on the part of the trustees to accept the trust, and to act faithfully and justly in the execution of the same. CLERKE, J., dissented.

MOTION by the plaintiffs for a new trial, upon exceptions. The action was brought by the plaintiffs as judgment creditors of the defendant Breck, to enforce a judgment recovered against him, and to set aside an assignment made by him, of his property, to the defendants Allen and Paxson, in trust for the benefit of creditors. The judge, at the circuit, directed that judgment be rendered against the defendant Breck, and that the complaint be dismissed as to the defendants Allen and Paxson, with costs. The grounds upon which the assignment was claimed to be fraudulent and void, are set forth in the opinion of Justice CLERKE.

*T. W. Tucker*, for the plaintiff.

*Wm. Bliss*, for the defendants.

MITCHELL, P. J.   It is true the assignment in this case declares that the trustees shall not be answerable for the acts, neglects or defaults of any attorney or agent that they may appoint, nor for any misfortune, loss or damage which may happen without their willful default; but this is followed by an express covenant on their part to accept the trust and to act faithfully and justly in the execution of the same.   The two parts of the trust deed are to be taken together, and if the trustees were sued for any fraud committed under the deed, or for any thing indicating a breach of faith towards creditors, the deed itself, on its face, would show their liability, if such wrong in fact were proved. The deed, then, cannot be fraudulent on its face, and there was no pretense that it was fraudulent in fact.   It was argued that

under the first clause the trustees might carelessly appoint incompetent agents. If their carelessness were so gross as to amount to fraud, they would be liable as for their willful default, and under their covenant to execute the trusts faithfully and justly. If their carelessness did not amount to fraud or to a willful default, or to an unfaithful or unjust execution of their trusts, then only they would be protected by the deed, and that would be because the deed on its face does not admit of any fraud; it cannot then be fraudulent on its face or in its provisions. These, too, are the common provisions in trust deeds, and should not be condemned by a decision avoiding all such instruments, when they have received the sanction of the profession, and been generally acted on. It is no proof that an assignment is fraudulent because it may be perverted by a careless and indifferent and fraudulent trustee. Fraud ought not to be presumed from the provisions of an instrument which admits of a contrary interpretation, any more than it should be presumed from the acts *in pais* of a party, which admit of an interpretation in favor of honesty; and especially it ought not to be inferred conclusively from an instrument which requires a faithful and just execution of its trusts on the part of the trustee. Mr. Hill, in his Treatise on Trustees, after showing that a trustee may be liable where he neglects to prevent a wrong which he knows his co-trustee is about to accomplish, or to prevent a repetition of it after he knows it is done, explains a clause analogous to the one in this case, and says : " The ordinary claim for the indemnity of trustees, which limits their liability to *their own* acts, does not apply to breaches of trust of the nature discussed in this section. Indeed such a clause appears to be of little or no practical use ; for if the conduct of the trustee be such as *not to amount to a breach of trust,* he will not be liable for the acts of his colleagues, though there be no such clause in the trust instrument ; and *if there be a breach of trust* on his part, the clause in question will not apply." (*Hill on Trustees,* p. 314, § 1. *Macklin* v. *Fuller, Jacob,* 198.) Can any thing more be needed in this case ? If there was any breach of trust

Jacobs *v.* Allen.

here, no clause in this deed would protect the trustee, and if there were no breach of trust, he would not be liable even if that clause were omitted.

The judgment should be affirmed, with costs.

ROOSEVELT, J., concurred.

CLERKE. J. This is an action to set aside an assignment as fraudulent and void against creditors. The plaintiff maintains that it is void on its face, in consequence of the following clause : " The parties of the second part shall be charged and chargeable only with and for so much money and property as they shall re-spectively receive, and *shall not be answerable or accountable for the acts, receipts, neglects or defaults of any attorney or attorneys, agent or agents, that they may employ, nor for any misfortune, loss or damage which may happen, without their willful default."*

Here, then, by the operation of the instrument itself, they are exempted from all responsibility in the employment of agents. However careless, however indifferent they may be in the selection of suitable and trustworthy persons to serve them in performing their trust, they are relieved from all care as to the conse-quences. They may employ a man utterly incompetent, without inquiry about his qualifications or his character, and if he waste or plunder the property, they are not legally involved, if this instrument shall be sustained ; and beyond the mere moral ob-ligation there is no inducement whatever for the faithful perform-ance of their duties ; except so far as their own debt is con-cerned, which, as usual in cases of this nature, is preferred. They are also exempted from all responsibility on account of any misfortune, loss or damage, except what may arise from their *willful default.* A trustee being under an obligation by his acceptance of the trust to husband the property confided to him with the care and diligence of a provident owner, is liable for every loss sustained by reason of his negligence, want of caution, or mistake, as well as for positive misconduct or *willful* default. The law would not excuse him, even if he managed the

affairs of his trust in the same manner in which he managed his own, unless that management were diligent and prudent. Ordinary diligence and ordinary prudence are required. But the provision in question exonerates the trustees from any thing approaching to this, and makes them only liable for any loss arising from their *willful default ;* thus nullifying the requisitions of the law. If a debtor and one or two of his creditors to whom he gives a preference can come together, and, in this way, dispense with all responsibility in regard to defalcations or waste, and any losses which might have been prevented by ordinary care and diligence, creditors not preferred can always, with very little contrivance, be hindered, delayed or defrauded.

The clause at the end of the instrument, binding the assignees " to act faithfully and justly in the execution of the trust," does not counteract the effect of the preceding clause, which releases them from all accountability for the want of ordinary care and diligence. The whole language of the assignment should be taken together ; and they may well say, if brought to an account, for the consequences of mistakes or omissions, which ordinary prudence and forecast could have averted, that they did not, nevertheless, act unfaithfully or unjustly ; because, by the express terms of their trust, they were only chargeable for any misfortune, loss or damage, which may happen by their *willful* default. Under that part of the clause exempting the assignees from all care in the appointment of agents, it could also be easily contrived that the assignor himself should have the actual management of the trust ; for the trustees could, without much difficulty, and without making themselves amenable for *willful* default, select some confederate of the assignor, who would connive at his interference ; and thus these subordinate agents could make any disposition of the property, although entirely at variance with the professed object of the assignment ; the trustees, in the meantime, escaping all liability, unless a positive and *willful* violation of duty could be proved against them.

At the present time, certainly, the law will not relax the rules relating to assignments. Every provision in these instruments, which may enable the debtor, or his assignees, *by the operation*

Jacobs *v.* Allen.

*and effect of the instrument itself,* to hinder, delay, or defraud creditors, should, in my opinion, render the instrument void on its face. And this is the only safe principle by which to test their soundness, leaving no room for collusion, allowing no intermeddling on the part of the debtor, and keeping the assignee to a strict accountability like any other trustee. While the courts must sustain the right to provide for preferences, and the right to have the assets divided among the creditors, provided nothing is restored to the debtor until all the creditors are paid, the policy of the times as well as the interests of commerce, and, I may add, the higher interests of morality, demand a severe scrutiny into all those methods, by which the assets of a debtor are taken from the ordinary legal course of applying them to the satisfaction of his debts.

It is admitted by the counsel for the plaintiffs, that the judgments stated in the answer were duly recovered by Allen and Paxson, the assignees, and that the amounts for which they were rendered were due. It becomes a question, then, whether they have a right to set off their claim on Beck, and to apply the proceeds of the assigned property to the payment of their judgments against him.

It has been usual, where assignments have been set aside as fraudulent by reason of some objectionable provision on their face, as in this case, to allow the trustees all payments made by them to the other creditors, previous to the commencement of the action, and also all necessary expenses and disbursements incurred in collecting and converting into money the property and effects assigned. It is admitted that the assignees received, under the assignment, between the recovery of the plaintiff's judgment and the commencement of this action, seventeen hundred and eighty-six dollars, and previous to the plaintiff's judgment, two thousand one hundred and fifty-nine dollars, and, since the commencement of this action, five hundred and twenty-three dollars and forty-two cents. It does not appear that they have applied this amount to the payment of the claims of any other creditors. In analogy to the general practice in such cases, I think that it would be proper to allow the assignees to apply

the proceeds received, and probably appropriated by them, previous to the commencement of this action, to the payment of their own judgments, and to the expenses of the trust, and that the proceeds, received after the commencement of this action, should be applied to the payment of the judgment of the plaintiff, who has obtained an equitable priority over other creditors by these proceedings. An order should be entered declaring the assignment void, reversing the order dismissing the complaint as to Allen and Paxson, and providing for the application of the proceeds as above indicated.

[NEW-YORK GENERAL TERM, November 6, 1854. *Mitchell, Roosevelt* and *Clerke*, Justices.]