Henry G. Smith, J.,
delivered the opinion of the Court.
These causes were heard in Chancery at Nashville, together. . In their material elements they are alike, and the discussion and disposition of one, will apply to and dispose of the others.
E. Seeskind and George Lyon were partners in the business of merchants, under the name of E. Seeskind & Co., having a business house at Nashville, in Tennessee, and another at Columbia, in South Carolina. In January, 1866, under the stress of attachments levied by creditors on the property of the firm at Nashville, during the temporary absence of Seeskind from Nashville, Lyón executed at Nashville, in the name of E. Seeskind & Co., an assignment of all the properties of the firm and of both the business houses, to Max Dink-enspiel, in trust, to sell the properties and apply the proceeds to the payment of their creditors. Preferences were made by the terms of the deed, among the creditors. The attaching creditors and others, were placed in the first class; other creditors in the second class; and the residue of their creditors in the third and last class.
*169 The deed contains a clause, which declares that no responsibility shall be incurred by the trustee, except for a wanton neglect in the discharge of his’ duty in the execution of the trust.
Soon after the making of the assignment, the trustee, Dinkenspiel, went into the County Court at' Nashville, and entered into the bond and took the oath -prescribed by the Code, section 1974, and following, to perform faithfully the duties imposed on him by law and the deed of assignment.
The defendants allege in their pleadings, and show by proof, that it was supposed by Lyon and Dinkenspiel, at the time Lyon signed and executed the deed, that this clause was not in the deed. It was inserted by the draftsman, at the suggestion of Lyon in the first instance. When read to Dinkenspiel, he objected to the clause, and it was ordered to be erased. Some interruption occurred at the moment, which prevented the erasure of the clause and signing of the deed at that time. Afterwards, and when the deed was signed, the fact that the clause had not been erased, was inadvertently overlooked.
Neither trustee nor beneficiary signed the deed. The execution of the deed was made in the presence of Dinkenspiel, and he accepted the trust at the time, and thus became a party to it.
A few days after the assignment was made, three creditors of the firm, of the residuary class, the complainants here, and who did not accept the assignment, exhibited separate bills of complaint in the Chancery Court at Nashville, against Seeskind, Lyon, Dinkenspiel, *170 and the preferred creditors. These hills are substantially alike. They are framed chiefly upon the jurisdiction created by the sections of the Code, 4288, and the following. The equities which they allege, are, the indebtedness of E. Seeskind & Co., and the fraudulent character of the assignment as against the creditors. The frauds alleged, are: first, actual, that the purpose of the parties was to defraud creditors; second, fraud, by construction of law upon the clause exempting the trustee from responsibility, except for wanton neglect of duty; and third, fraud in this, that Lyon made the assignment, giving preferences, in the temporary absence, and without the concurrence, of Seeskind.
Writs of attachment were issued upon the bills by the clerk of the Chancery Court, upon bonds given by the complainants, of the kind prescribed in cases of original attachments, and without any order of Judge or Chancellor, and without any bond prescribed by Judge or Chancellor. Under these writs, the properties of the firm at Nashville embraced in the assignment, were seized.
The trustee, Dinkenspiel, replevied the properties, giving bond and security, as prescribed by law, for replevy in cases of original attachment.
The defendants put in answers, denying the frauds charged, and the equities generally of the bills. Proofs were taken, and the causes went to final hearing on bills, answers,7 replications, proofs, etc.
Such is a general outline of the pleadings and evidence in the case, sufficiently particular and accurate for the purposes of this opinion, and the decision of the rights of the parties.
*171 A point is made by the defendant, which, if well taken, disposes of the case.
The writ of attachment was issued by the clerk, without order of Judge or Chancellor, and without bond prescribed by Judge or Chancellor. The defendants allege the writ to be void for want of such order and bond, and so the seizure of the properties without jurisdiction of the properties seized, and consequently, incapable of rendering a decree subjecting them to the demand of the complainants.
The bill is framed and stands as before stated, upon the equity and jurisdiction created by the secs. 4288, and following, of the Code. These sections are, in terms, as follows: “Any creditor, without having first obtained a judgment at law, may file his bill in chancery, for himself, or for himself and other creditors, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering and delaying creditors, and subject the property, by sale or otherwise, to the satisfaction of the debt.” “Upon filing the bill, writs of attachment and injunction may be granted on complainant giving bond and security in such sums as the Chancellor or Judge may order, conditioned to comply with the orders and decrees of the Court, and to pay such damages as may be awarded and recovered, for wrongfully suing out such attachment or injunction.” “The Court has the same power and jurisdiction in all respects, to set aside fraudulent devices, in the cases mentioned in the last three sections, and to subject the property, by sale or otherwise, to the payment of' debts, as if the creditor had obtained *172 judgment, and execution thereon had- been returned unsatisfied.”
The intent of these enactments of the Code is, to give creditors at large, the same remedies against fraudulent conveyances and decrees of their debtors, as are had in chancery, according to the course of the common law, by judgment creditors. The proper construction of the sections quoted above, is, that the Court has the same power and jurisdiction, in all respects, to set aside fraudulent conveyances and other fraudulent devices, in the cases mentioned in the three sections, 4288, 4289, 4290, and to subject the property, by sale or otherwise, to the payment of debts, as if the creditor had judgment, or judgment and execution, or judgment, execution and a nulla bona return.
And now, as to the writ of attachment herein assailed as void. It is an error, to confound the writ of attachment authorized and proper in cases of the kind here, with the writs of attachment grounded on one or more of the causes designated in the seven subsections of the section 3455, of the Code, and commonly called original attachments. The writ of original attachment is the original leading process in the cause. Its purpose is, to bring the property of defendant into court, and thereby give the Court jurisdiction of the action against the defendant. Unless . the . property of the defendant be brought, by the writ, into the control of the Court, the Court has no jurisdiction of the action against the defendant. The seizure of the property is essential to the jurisdiction of the Court. If the writ be void, and the defendant do nothing to *173 waive the irregularity of the writ, or to give the Court jurisdiction of his person, and so of the action, by his appearance and pleading to the merits, the Court has no jurisdiction of the action; and proceedings thereon are void, the seizure is void, and the judgment thereon is void.
In cases of creditor’s bills upon judgment to set aside fraudulent conveyances, the original process is the chancery writ of subpoena. Upon the filing of the bill, the subpoena issues, and the defendant is brought into court by service of the subpoena, or, if service of subpoena on the person of the defendant be not practicable, by reason of his non-residence, or other sufficient cause, publication takes the place, and performs the function of the subpoena. By service of the subpoena or publication, the Court obtains jurisdiction of the person of the defendant, and so of the action against the defendant. Having thus obtained jurisdiction, the Court may rightfully proceed to decree upon the equity of the cause, and give such relief to the complainant as may be suitable to the equity alleged and established. If the subject matter of the controversy be property of any kind, the Court may decree such relief as may be proper to the equities of the parties, and execute such relief by process suitable to the purpose. Seizure of the property, pending the litigation, or at the beginning, is not generally essential to give the Court jurisdiction over it, and to enforce the proper relief in respect of it.
But it may be useful in the progress of the cause, and often at the beginning, to obtain control of the *174 property, with, a view to its safety, to abide the issue ‘of the. suit. Causes of fear may exist, at any time pending the litigation, or at the beginning, that the property which is the subject matter of the suit, may be wasted, squandered, removed, distroyed or otherwise put in jeopardy. If such causes of fear exist, and they be properly shown to the Court, and verified, the court will issue process to seize and impound it. Such process is the writ of attachment. This is auxiliary to the jurisdiction of the Court, but is not the original leading process in the cause. In creditors bills to set aside fraudulent conveyances, it is often useful, and sometimes necessary to the safety of the property conveyed, which is the subject of the suit, to cause it to be impounded. But it is not essential to the jurisdiction of the Court, to enable it to proceed to decree upon the matter of controversy, that the property be seized or impounded.
It is essential to the equity of the bill, and to the relief sought by the complainant, that a lien be had upon the property, at the time of the filing of the bill. Such lien does not generally depend on actual seizure of the property. In some cases, the lien accrues at the time of the filing of the bill, and sometimes it accrues before. But it seems that such lien should exist, or be created at the time of the filing of the bill. In creditors’ bills, upon judgment, the judgment sometimes gives the lien; sometimes the judgment and execution, or judgment, execution and levy; and sometimes the judgment, execution, and return of nulla bona. As to realty, the judgment gives the. *175 lien, and if the bill be filed in time and while the lien of the judgment continues, the lien accrues from the commencement of the lien of the judgment. As to legal personalty, in order to obtain the lien, there must be judgment and execution, and the lien accrues from the teste of the execution, if the bill be filed while the lien of the execution exists. As to equitable personalty, the lien accrues at the time of the filing of the bill. Neither judgment nor execution, gives a lien upon such equitable personalty. The equity of the bill, to subject personalty of that kind, depends on the fact that the legal remedies have been exhausted without obtaining satisfaction of the judgment at law. The evidence of such exhaustion is, the return of nulla bona upon the execution. Hence, there must be judgment, execution and nulla bona return, in order to maintain the bill as to equitable personalty. The principles here stated, are those upon which Courts of Chancery proceed, when their modes of procedure upon bills of the kind have not been changed by statutory regulations.
The case of Peacock vs. Tompkins and others, reported in Meigs’ Eeports, page 317, illustrates and verifies the doctrines here stated. That was the bill of a judgment creditor, filed to set aside a fraudulent conveyance, and to subject the properties conveyed to the satisfaction of the judgment debt. The properties involved, were personalty, both legal and equitable; and before the filing of the bill, the creditor sued out execution on his judgment, and had it returned nulla bona. The bill was filed in February, 1838, and before the *176 statute which authorized creditors at large, without judgment, to file bills to set aside fraudulent conveyances and subject the properties to the satisfaction of their debts. No seizure of the properties appears to have been made in that case, nor. any writ of attachment issued for the purpose, pending the litigation.
It thus appears, that, in order to the maintenance of the bill of a judgment creditor, to subject properties fraudulently conveyed, it is not necessary that a seizure of the properties be made, at the beginning or during the progress of the suit.
And it further appears, that the Court may proceed to decree and subject the properties, although no seizure be made at the beginning of the suit, or during its progress to decree.
The omission to seize and impound the property pending the suit, does not discharge or release the property from the lien. By force of the rule of Us pendens, operating as constructive notice to all persons, of the pendency and purpose of the suit, the lien follows the properties into whosesoever hands they may go, and holds them wherever found, subject to the satisfaction of the decree rendered in favor of the creditor complainant.
It is easy now, to understand the purpose and meaning of the section 4289, which authorizes the grant of the writ of attachment in cases of this kind. By section 4291, the Court has the same power and jurisdiction in all respects, to set aside fraudulent conveyances and subject the properties by sale or otherwise, in favor of creditors at large, as of judgment creditors. Upon the bill *177 of the judgment creditor, it is not indispensable to the jurisdiction of the court, that seizure be made by attachment of the properties concerned. But it may be useful at the beginning, or during the progress of the cause, to impound the properties by means of the writ of attachment. And so, also, upon the like bill of the creditor at large, under the section 4288 of the Code, the writ of attachment and seizure is not indispensable to the jurisdiction of the court, but may be useful to the security of the properties.
This construction of the law finds abundant sanction in the phraseology employed by those who put the section into language and those who enacted it into law. The Avoids are: "Upon filing the bill, writs of attachment and injunction may be granted, on complainant giving bond,” etc. "May be granted,” are words optional, not imperative. It can be scarcely supposed that optional words would have been employed, had the law makers intended that the writ should be essential, and the leading and original process, without which jurisdiction would not vest in the court. Had such been the meaning, the natural and obvious words would be, "shall be issued,” not "may be- granted.”
Concede, therefore, that the writ of attachment issued in the case in hand, by the clerk, without the order of Judge or Chancellor, was void, it does not, therefore, follow that the court was without jurisdiction to entertain the bill and proceed to final decree upon the matter of equity between the parties. On the contrary, the court had jurisdiction, and ought to have proceeded to decree upon the matter involved, to-wit: the fraud *178 or good faith of the deed of assignment, and to subject, by sale or otherwise, the properties bound by the lien of the bill. To enforce such decree, the writ of attachment may be proper.
It is .proper to add, that the Court is of the opinion that the clerk was not authorized to issue the writ of attachment in this case, without the order of a Judge or Chancellor. The writs of attachment which clerks are authorized, by virtue of section 3463 of the Code, to issue without the order of Judge or Chancellor, are, the writs of original and auxiliary attachment, grounded upon one or more of the causes designated in the seven sub-sections of the section 3455 of the Code.
In the view we have taken of the immateriality of the attachment in this cause, to fix and hold a lien upon the properties involved, and to give the court jurisdiction to proceed to decree and relief, it is scarcely necessary to determine whether the irregularity of the writ has been waived or not, by the acts of the defendants. The acts referred to, are, the replevy of the properties sold by the trustee, Dinkenspiel, and the proceeding by the defendants to final hearing, without taking any exception to the irregularity complained of.
The view thus taken of the writ of attachment, brings us forward to the inquiry, whether the deed be void for fraud, or valid.
Actual fraud, fraud in fact, is not made out by the proofs.
The fraud alleged, is said to be found in the clause of the deed of assignment which declares that, “no responsibility is to be incurred by the trustee, except in *179 case of wanton neglect in the discharge of his duty under the trust.”. The complainants say, this is a stipulation which is fraudulent by construction of law, and so necessarily vitiates the deed as against creditors.
The defendants answer: first, that it is not, in itself, a fraudulent stipulation; and second, if it were so in itself alone considered, the vicious character and effect of it is removed by the force of the provisions of the Code, section 1974, and the following.
The substance of these sections, is, that assignees for the benefit of creditors, before entering on the discharge of their duty, shall, unless released in writing by the creditors, etc., give bond and security, conditioned for the faithful performance of all the duties imposed upon them by law and by the terms of the deed or assignment; and shall take and subscribe an oath before the Clerk of the County Court, that they will honestly and faithfully execute and perform all the duties imposed on them by the law and by the deed or assignment; and that they will make a true and perfect inventory of all the assets, etc.; and that they will make return and file in the clerk’s office, a true and' perfect account of all sales made and all moneys received, etc.; which bond and oath, shall be filed and preserved by the clerk.
Soon after the assignment was made, Dinkenspiel, the trustee, went before the clerk and gave the bond and made the oath, as prescribed by the sections of the Code referred to.
For the defendants, the claim is, that the effect of the statutory provisions, and the entering into the bond, and taking the oath prescribed by the trustee, is to *180 place tlie trustee in respect of the degree of care, diligence and fidelity, incumbent upon ,him in the performance of the trust, precisely the same as if the offensive clause were not in the deed; that the trustee having given the bond and taken the oath, is bound by law to the same care, diligence and fidelity, as he would by law, be bound to exercise in the absence of such stipulation from the deed, and consequently that the offensive clause is a nullity, and so to be dealt with in determining the vicious or valid character of the deed.
In the absence of any stipulation as to the degree of care, diligence and fidelity which the trustee shall exercise, the law imposes upon him the duty to give such care, diligence and fidelity to the performance of the trust, as men of ordinary capacity and diligence, give to the conduct of affairs of their own of the like kind. Ordinary care, ' diligence and fidelity, is the usual expression of the rule. On the other hand, when the parties stipulate the degree of care and fidelity to be given, the stipulation determines the measure of care, diligence and fidelity required of the trustee. The measure of liability imposed upon him by law, is the measure prescribed by the stipulation. The law does not impose upon him a measure of care, diligence and fidelity, beyond the measure prescribed by the stipulation. To conform to the stipulation, is not to fall short of the duty imposed by law. Where, therefore, he gives bond and takes oath to perform faithfully the duties imposed upon him “by law, and the terms of the deed or assignment,” he undertakes *181 no measure of care, diligence and fidelity, greater than the measure he has agreed to give, and the donor and beneficiaries of the trust have agreed to accept. The law of the contract between the parties, determines the duty of the trustee imposed upon him by law, and the terms of the assignment.
Such is the proper construction upon the provisions of the Code. It is not sensible to suppose that the statute' intended to take from parties to the contract, the power to prescribe the terms and obligations of their contract, or to take from them power to determine their rights and liabilities by their contract. If they choose to contract for a specific degree of liability, the law allows them, as between themselves, to so contract, and imposes upon them no right or duty beyond the limit they have agreed upon.
The conclusion is, that the vice of the clause, if any there be in it, as against assailing creditors, is not taken out or neutralized by the provisions of the Code, contained in sec. 1974, and the following.
The question then comes, whether the offensive clause of the deed is, in itself, fraudulent, by construction of law, as to creditors.
The case of Litchfield, etc., vs. White etc., 7 N. Y. Rep., 438, appears to be to the nearly precise point. The parties there agreed, and so stipulated upon the face of the assignment, that the trustee “shall not be liable or accountable for any loss that may be sustained by said trust property, or the proceeds thereof, unless the same shall happen by reason of his own gross negligence or willful misfeasance.” . It was held *182 that the stipulation vitiated the deed as against assailing creditors. This was a decision in the Court of Appeals of New York. The case had gone through the Supreme Court of the State, for the district of the City of New York, and there decided as afterwards affirmed in the Court of Appeals. The decision of the Supreme Court may be found reported in 3 Sandford’s Rep., 545. The like ruling, appears to have been made in 1 Wisconsin Rep., 286; Hutchinson vs. Lord, cited in Burrell on Assignments, 228, and stated in the following language: “The rule being that a reservation or restriction of the liability of an assignee to a degree less than that which the law imposes on trustees, renders the assignment void.”
The case of Jacobs vs. Allen, 18 Barb., 549, though cited as differing from Litchfield vs. White, can scarcely be so considered. In Jacobs vs. Allen, etc., the offensive clause in the deed, was, that the stipulation that the trustee “shall not be answerable for any loss or damage which may happen without his default.” But this was followed by a covenant on the part of the trustee, that he would act faithfully and justly in the execution of the trust. Some effect was given by the Court to the latter covenant, as qualifying and neutralizing, to some extent, the character of the former stipulation exempting the trustee from responsibility except for willful default. It may be presumed, that had the clause of exemption stood alone unqualified, as stands the offensive clause in the deed now under consideration, the decision and opinion of the Court, in 18 Barbour Rep., would have declared the deed there *183 void. However this may be, we think tbe bolding of tbe Court, in Litchfield vs. White, tbe better law.
Such are tbe authorities, precisely to tbe clause here, within our reach at this time. They stand on sound principle. Tbe debtor owes a duty to bis creditors, much above tbe standard of wanton neglect. His duty is, at least, to give ordinary care and fidelity to tbe discharge of his obligations. Less than that measure of duty falls short of the good faith he owes to those who have reposed trust in his provisions. Expressly to measure his sense of duty by the rule of wanton neglect, would indicate a standard of conscience, willing and prone to fraud; and acts avowedly done in accordance with such standard, sink to the depth of fraud.
Ear worse is it, of an insolvent debtor, to place all his assets out of the reach of process of law, in the hands of an agent, with an express stipulation that the agent shall be allowed to give less than ordinary care and fidelity, and be responsible only for wanton neglect.
And still worse is it, to exact from his creditors an agreement as a condition of obtaining any thing under the assignment, from his assets, that the agent shall be permitted to give less than ordinary care and fidelity, and be responsible only for wanton neglect. The acceptance by the creditors of the assignment, with such clause, is an agreement by them, to abide by the legal effect of the clause. And unless they accept, they can take nothing under the assignment.
The natural tendency of the stipulation, upon the conduct of the trustee, is, to produce carelessness and *184 negligence in the performance of tbe trust. It enables him to wink at, or be blind to, transactions in regard to the assets, by the debtor, injurious and fraudulent toward the creditors, and without any responsibility of the trustee to the creditors. Usually, or often, the trustee is the confidential friend of the debtor, and often the assets are allowed to remain in the hands of the debtor for collection and reduction to money, and it is not ordinarily wanton neglect in the trustee so to do.
There can be no doubt that the clause in question, is, by construction of law, void, and that the deed is fraudulent on its face, and therefore, void.
In this aspect of the case, it is not necessary to consider the question as to the power of one partner under the circumstances shown in this record, to execute an effectual assignment of all the properties of the firm, giving preferences among the creditors provided for in the deed of assigmnent.
But the question meets us here, which may change the whole complexion of the case: The defendants
allege and prove, that the clause assailed for fraud, was, before the execution of the deed, directed by Lyon, the partner, and Dinkenspiel, the trustee, to be erased, and was, by inadvertance, not erased, and was supposed to be erased at the time of the signing and delivery of the deed. Is any. effect to be given to this proof? On the one hand, it is objected that the evidence is inadmissable, upon the general rule that parol evidence shall not be allowed to add to or detract from the writing which expresses the contract. On the other hand, the rule is said to be applicable only between *185 the parties to the contract. The authorities to the question, within reach, are these: Phillips, in the text of his work on evidence, states the rule in these words: “The rule does not apply where neither the parties to the instrument, nor their representatives or privies, are parties to the suit or proceeding in which the instrument is brought forward; for it is a principle that the stranger to a deed cannot be estopped by the statements of the deed, from proving the truth of the fact:” 2 Phil. Ev., 697,- top page, Edwards Edition of 1859. The text of Greenleaf, sec. 279, vol. 1, is: “The rule under consideration is applied only in suits between the 'parties to the instrument, as they alone are to blame, if the writing contains what was not intended, or omits that which it should have contained. It cannot effect third parties, who, if it were otherwise, might be prejudiced by things contained in the writing, contrary to the truth, through the carelessness, ignorance or fraud of the parties, and who, therefore, ought not to be precluded from proving the truth, however contradictory to the statement of others.”
Starkie does not undertake to express the exception to the rule, as to the admissibility of parol testimony, to vary the terms of the writing in any formula of words, but cites and comments on cases declaring or illustrating the exception. Among others, is cited the case of Greene vs. Weston, Sayers, 209. The case was: The plaintiff sued the defendant, who was heir and devisee on a bond. The issue was, whether the defendant had sold the estate for more than £168. A lease and release were produced in evidence, from which *186 it appeared that the defendant had sold the estate for £208. It was held, that the defendant might prove that part of the estate so sold did not belong to the testator, but had been purchased by the defendant, for the sum of £42, in order to be sold to the vendee. Starkie says: “Here the evidence was consistent with the terms of the deed. But even if it had not been so, it seems it would still have been admissible between those parties, (the parties to the action,) for although as between the defendant and the vendee, the defendant might have been estopped by the terms of the deed, from making any averment against it, yet, as between the plaintiff and defendant, there was no mutuality, and consequently no estoppel; and therefore, the defendant was not concluded upon issue joined, as to the amount for which the estate sold, from showing the real fact. In the same case, it was held, that, although the deed stated that the consideration was paid to the vendor, evidence was admissible to show that it was paid to a third person, with his privity.” 3 Stark. Ev., 1053.
In Iredell’s Rep., vol. 2, page 26, is to be found the case of Reynolds vs. Magness, opinion by Gaston, Judge, and Ruffin and Daniel, associate judges. The case was: Plaintiff Reynolds had become, at the request of the defendant, Benj. Magness, the surety on a bail bond for the appearance of one Samuel Magness, to answer the suit of William Magness, and upon the promise of the defendant, Benj. Magness, that he would hold the plaintiff, Reynolds, harmless against his liability on the bail bond. Samuel Magness forfeited his *187 bail, and judgment was bad on the bail bond, against Eeynolds. Execution issued against Eeynolds; and in order to enable him to maintain an action against the principal in the bond, Samuel Magness, he, (Eeynolds,) in 1831, made a bill of sale of divers slaves, absolute on its face, and which he said was to pay the execution, but which was intended really as a security for the amount of the execution. The slaves remained for several years in the hands of Eeynolds, until in 1833, William Magness took possession of the slaves and held them in satisfaction of the judgment upon the bond. The question was, whether Eeynolds paid the surety debt in 1831 or in 1833. If paid in 1831, the statute of limitations barred Eeynolds’ action against Benj. Magness upon his promise to indemnify. If paid in 1833, the action was not barred by the statute. As the law is understood in Tennessee, perhaps the testimony proposed would have been admissible in a litigation between the parties to the bill of sale. In North Carolina, it is to be inferred from the opinion in this case, that the law is understood there to be otherwise. Gas-ton, Judge, in delivering the opinion in this case, says: “The rule of evidence, that where the parties to a contract have reduced their agreement to writing, parol evidence shall not be received to alter or contradict the instrument, applies to controversies between the parties and those claiming under them. The parties have constituted the written instrument to be the authentic record of their contract; and because of this compact, the instrument must be taken, as between them, to speak the truth, and the whole truth in relation to its subject *188 matter. But strangers have not assented to this compact, and therefore are not bound by it. Where their rights are concerned, they are at liberty to show that the written instrument does not disclose the full or true character of the transaction. And if they be thus at liberty, when contending with a party to the transaction, he must be equally free when contending with them. Both must be bound by this conventional law, or neither.” The result was, that the testimony was held admissible.
The case of Gimell, Simicher, Storms & Co. vs. Adams and others, 11 Hum., 283, was, where an agent had authority to make an assignment of the properties of his principal, for the benefit of the creditors of the principal, and executed such assignment, including in it provisions of a character fraudulent as to creditors of the principal. These provisions the agent had no authority to make. The deed was assailed by creditors of the principal, as fraudulent and void by reason of the provisions. The Court held, that, inasmuch as the agent had no authority to make the fraudulent provisions, they were not the provisions of the principal, and were not the act of the principal, and as to him were not part of the deed of assignment, and so did not affect the deed with the taint of fraud.
It is to be conceded that the rule excluding parol testimony offered to vary the written instrument, is generally applicable to those cases only where the litigation is between the parties and privies to the instrument, and is not applicable, generally, to cases between strangers to the instrument, or to a stranger upon one *189 side and a party or privy upon tbe other. We are, however, unable to put the case in hand, in the category of those out of the general rule. Parties standing in the relation of these and to a litigation and instrument of the present kind, must be placed on the general rule. It would be extremely dangerous, in cases of litigation of this kind, to allow the original parties to the assignment and those who became so by accepting it, to produce proof, where the validity of the instrument is assailed, showing that the vicious clause apparent on its face, and for which it is assailed, was inserted or retained by inadvertence or mistake, and so give to the instrument an actual character altogether different from its apparent character. Undoubtedly, if a clause were inserted or retained by inadvertence, or mistake, and against the intention of the parties, it may be reformed by proper proceeding in chancery between the parties to the instrument. And so reformed, the instrument would be relieved of its vicious taint, and be valid as to creditors assailing it. Not so reformed, or in the absence of any proceeding to effect the reformation, the instrument must stand or fall upon the character impressed upon its face by the parties, and by them sent out upon the world as expressing the contract and purposes of the parties to it.
It is not pushing the doctrine of estoppel beyond reasonable limits, to hold, that, in such circumstances, and as against creditors declining to accept the assignment and assailing it as fraudulent upon them, the parties who executed the instrument shall not be allowed to protect themselves against the consequences of their *190 acts, by showing that the instrument is, in fact, not such as they presented it to their creditors.
The conclusion is, that the assignment is void, by construction of law upon the vicious clause contained in it; that the complainants have an equity to a decree avoiding the assignment, and awarding them relief; that though the writ of attachment was void, and the seizure under it void, and so no lien obtained by virtue of the attachment; nevertheless, a lien was obtained upon the properties assigned, by the filing of the bills, and accruing from the date of the filing of the bills, and following and binding the properties, wherever they may be found; and charging Dinkenspiel, the trustee, with properties which went into his hands; or, if he has converted them, or reduced them to moneys, then charging him with their value, or with the moneys into which he reduced them.
The execution of this decree, in the details suitable to the relief granted, might be enforced by proper accounts and orders in this court. It is more convenient however, to remand these causes to the Chancery Court, for such purpose. That Court will execute the decree, upon the principles adjudged by this opinion, and upon the basis that the assignment is void, and that the complainants have a lien upon the properties assigned, accruing from the filing of the bills, as against Dink-enspiel and the other defendants, and to the extent of satisfying the debts owing to the complainants.
*193 CASES ARGUED AND DETERMINED IN THE SUPREME COURT OF TENNESSEE, FOR THE EASTERN DIVISION. KNOXYILLE,.SPECIAL TEEM, MARCH, 1869.