Tuttle *v.* Gilmore.

GEORGE F. TUTTLE, appellant,

*v.*

AMELIA L. GILMORE et al., respondents.

1. By the terms of an instrument creating a trust, the liability imposed on and assumed by the trustee may be limited. If there be a clause fixing the trustee's liability, the rule for measuring such liability must be sought in that clause properly construed. A strict rule of construction will be applied as against such limitation on such liability, and the construction must be consistent with the object and purpose of the trust.

2. Where a clause in an instrument creating a trust exempts the trustee from liability, except for willful and intentional breaches of trust, the trustee is not exempted from liability for losses arising from his having made sales or investments without instituting proper inquiries and exercising a reasonable judgment in respect to the value of the consideration or securities received, nor for losses arising from investments of trust-funds in second mortgages, where no circumstances are shown to justify a resort to such hazardous secu-

Tuttle v. Gilmore.

rities.   The fact that the trustee neither made, nor intended to make, any personal gain from his acts, does not exonerate him from liability under that clause.

On appeal from a decree of the chancellor, whose opinion is reported in *Gilmore* v. *Tuttle, 5 Stew. Eq. 611.*

*Mr. John R. Emery*, for appellant.

*Mr. R. Wayne Parker*, for respondents.

The opinion of the court was delivered by

MAGIE, J.

On December 5th, 1867, James R. Gilmore and his wife, Amelia L. Gilmore (who had entered into an agreement of separation), conveyed to George F. Tuttle several tracts of land in Orange.   On the same day Tuttle executed a declaration of trust, declaring that the lands were held by him on certain specified trusts.   On March 2d, 1869, Mr. and Mrs. Gilmore modified in some respects their agreement of separation, and Tuttle, on the same day, executed, with their approval and consent, a new declaration of trust in respect to said lands.   By the terms of the latter declaration (which is the one in question) Tuttle was required, among other things, to raise $12,000 by the sale of some parts of the lands.   The sum so raised was to be applied as follows : $2,000 to be paid to Mrs. Gilmore, and $10,000 to be held in trust during her life ; part of the latter sum was to be invested in a homestead and the remainder in " good securities," the interest of which was to be paid to her for life, and thereafter the interest and principal to be otherwise disposed of. Power was also given to the trustee to sell under other contingencies.

James R. and Amelia L. Gilmore were afterward divorced and he intermarried with Amelia Burnet Gilmore.

Tuttle made sale of some lots on the tract he was directed to sell.   Some of them were made at the request of Amelia L. Gil-

more to her creditors, and the consideration went to make up the sum which was to be paid her.

Four conveyances of lots on the tract were made by Tuttle to Amelia Burnet Gilmore, the consideration of which, as named in the deeds, aggregated the sum of $24,972.76.

The bill in this case was filed by Amelia L. Gilmore and one of her children, interested in the trust, against Tuttle, the trustee, and the other *cestuis que trustent*. It charged, among other things, that Tuttle had accepted the whole consideration of the conveyances to Amelia Burnet Gilmore in second mortgages, which had proved worthless, while the land conveyed had come into the ownership of persons against whom no lien for the purchase-money could be enforced. There was a general prayer for an account and a specific prayer that the trustee should be charged with the losses by reason of the conveyances to Amelia Burnet Gilmore.

Tuttle, by his answer, admitted making the conveyances to Amelia Burnet Gilmore. He averred that by part of the consideration thereof, a homestead had been procured, pursuant to the requirement of the trust. He admitted that the remainder of the consideration was accepted by him in second mortgages. He sets out as reasons inducing his action, that he had been unable, after much effort, to make sales for cash; that the *cestuis que trustent* had urged him to sell; that he was informed and believed Amelia Burnet Gilmore to be a woman of large property; and that, while he had doubts of the propriety of taking such securities, he was influenced by the fact that counsel to whom he applied advised him that the securities proposed would be "sufficient and proper investments" for him as trustee to make. He averred that he derived no personal benefit from the transactions, but was actuated solely by a desire to benefit the trust estate. In view of these facts he claimed not to be liable for these losses, on the ground that he was alone liable for a "willful and intentional breach of trust," under the following clause of the declaration of trust, viz. :

"And lastly, it is understood and agreed as a condition of the trust hereby assumed and declared, that I, the said George F. Tuttle, shall not be liable or

responsible for any other cause, matter or thing except my own willful and intentional breaches of the trusts herein expressed and contained."

The evidence shows that the second mortgages received had proved worthless, except to the extent of $1,000, which, in some way not clearly explained, had been realized thereon. The others had been cut off by foreclosures and sales under prior mortgages.

On the hearing on pleadings and proofs, the chancellor held the trustee liable to account for the lands conveyed to Amelia Burnet Gilmore at their value at the time of conveyance. The cause was referred to a master to state an account on that basis. The master's report charged the trustee with the sum of $13,740, as the value of said lands at the time they were conveyed. The report was excepted to, on the ground that the valuations fixed by the master were excessive, against the weight of evidence, and made on erroneous principles. The exception was overruled and the report confirmed, and a final decree made thereon.

The trustee has appealed therefrom, and urges that it ought to be reversed in whole or in part. He insists, (1) that he is not liable to account for any part of the lands conveyed by him to Amelia Burnet Gilmore; and (2) that if liable, the value of the lands with which he is to be charged is much less than the value determined by the master and fixed by the decree.

The first of these contentions raises a question respecting the rule by which the trustee's liability in this case is to be admeasured. If, to the facts of this case, are to be applied the general rules governing trusts, it is manifest that the trustee cannot escape liability for the losses occasioned by his acts. This is conceded by his counsel, who only contend that the clause above quoted limits and restricts his liability so as to exonerate him in this case.

It is contended that the opinion below was erroneous in holding that the liability of a trustee could not be limited by such a restrictive clause. Such clauses in instruments creating trusts have been commonly used in England, and frequently the subject of discussion in their courts. Some of the cases cited by the

learned chancellor, and others that might be referred to, give some countenance to the view that no effective limitation can thus be imposed on the liability of a trustee. Others of the cases cited give no, or but little, practical effect to such a clause, but rather by way of construction and application of it, than by denying the right of restriction. In the former cases but little attention seems to have been given to this point, and they are all cases which, under a reasonable construction of the clause, were correctly decided.

It would seem on principle unreasonable to contend that parties creating a trust could not, by their agreement, limit the liability which is thus imposed by one and accepted by the other of them. Nor do I understand that such a proposition has ever been distinctly enunciated and decided. On the contrary, in *Bartlett* v. *Hodgson, 1 T. R. 42*, the usual indemnity clause in a trust-deed, was held to take away the responsibility to which the trustees, but for that clause, would be subject. In *Wilkins* v. *Hogg, 3 Giff. 116* (a case arising on trusts created by will), counsel urged that a clause restricting the liability of trustees was of no force, but Vice-Chancellor Stuart said on that point: " The argument has proceeded on the assumption that the usual indemnity clause amounts to nothing; that it never receives a literal interpretation, but that the court will look generally at the conduct of the trustees, and, for any carelessness or any act that a prudent man ought not to have committed, will visit the trustee who has been guilty of such acts, whatever may be the language of the will. That is not the law of this court." In the same case on appeal (*8 Jur.* (*N. S.*) *25*) Lord Westbury said " he should have been glad to find a case warranting the conclusion that, a duty having been undertaken, any words qualifying that duty should be nugatory, but such could not be held to be the law. It was perfectly competent for a testator to define what should be the incidents to the duty of a trustee so long as he kept within the bounds of the law." In accord with this view are the American cases holding that limitations on the liability of assignees in assignments for benefit of creditors are effective. *Litchfield* v. *White, 7 N. Y. 438; Olmstead* v. *Herrick,*

*1 E. D. Smith 310; Hutchinson* v. *Lord, 1 Wis. 286; McIntire* v. *Benson, 20 Ill. 500; Robinson* v. *Nye, 21 Ill. 592.*

In my judgment it is clear, both from principle and authority, that the liability imposed on and accepted by a trustee may be limited by the terms of the instrument creating the trust. If there is such a clause of limitation the rule for measuring the trustee's liability is to be sought in that clause properly construed. In construing such a clause, the meaning to be attributed to it should be consistent with the purpose and object of the trust, and a strict rule of construction should be applied as against the claim of restriction. But if, when so construed, a limitation on the liability of the trustee was clearly intended, the trustee is entitled to the benefit of it.

The clause here exempts from all liability, except for willful and intentional breaches of trust. It is, fortunately, not necessary now to determine in what cases this limitation will be practically effective. It is sufficient to determine whether it is effective under the circumstances of this case.

It is urged that the clause exonerates from all breaches of trust, except such as the trustee commits with a view to his personal advantage. But it is obvious that such a construction adds terms to the clause not contained therein and inconsistent with its plain purpose. It is a breach of trust for the trustee to speculate with trust-funds for his own gain, but it is no less a breach of trust to make unauthorized investments or take speculative risks, though for the benefit of the fund and not the trustee. To do so knowingly is a willful and intentional breach of trust. In my judgment, it is a willful and intentional breach of trust within the meaning of this clause, to knowingly do any act hazarding trust-funds, in violation of a duty imposed on the trustee. That this construction may leave but little force to the clause is no reason why it should not be adopted. If the intent of the parties was that the trustee might knowingly risk and hazard the trust-funds without liability, unless he intended to gain thereby, it was easy to express that intent in fitting words. No such words were employed, and no creator of a trust will ever be

Tuttle v. Gilmore.

likely to employ them. The construction no doubt expresses the real intent of the parties.

Applying this rule, I have no hesitation in concluding that the chancellor properly held the trustee in this case liable. If the transaction complained of be considered as a sale, the trustee's duty was to ascertain and determine that the consideration he was to receive was valuable. If it be considered as an investment of trust-funds, his duty was to ascertain and determine that the securities he was to receive were " good." Since the consideration to be received and the securities to be taken were mortgages, his duty was to examine the land mortgaged, and to ascertain by proper inquiries that the value thereof was reasonably sufficient to make them good, on which he was to pass his judgment. The case plainly shows that no proper examination and determination of the value were made. The trustee admits that he had no experience justifying him in determining its value, and he procured no estimates or appraisements of its value from others. He avers that he thought the security sufficient, but is careful to say that his opinion was based partly on the advice of counsel. What other basis it had, he does not disclose. The counsel referred to is not shown to have had any knowledge of the property or its value.

The case so presented is one of a trustee deliberately accepting securities for trust-funds, with no such inquiry into values as justified a judgment as to their sufficiency. This was a willful and intentional breach of trust, for which he is liable under the clause in the declaration of trust.

It must be further observed that the securities accepted by the trustee were second mortgages. It was in such securities, which have been called "improper securities" (*Lockhart* v. *Reilly, 1 De G. & J. 464, 476*), that he placed a portion of the land impressed with the trust, although, as appears, he had no funds in the trust capable of being used for their protection in case of the foreclosure of the prior mortgages.

It may be, and probably is, true that no case can be discovered holding that the mere taking of second mortgages by a trustee as security, is a breach of trust. Cases may be imagined when

taking such mortgages might be judicious. Under some circumstances, it is possible an investment therein might be proper. But, as was said by Sir John Romilly, M. R., in *Norris* v. *Wright*, *14 Beav. 291*, I do not desire to be understood as sanctioning the propriety of trustees lending on second mortgages. If the taking of such securities is ever justifiable, it must be under peculiar circumstances, which ought to appear and to be manifestly sufficient to justify such a departure from a safe rule. No such circumstances appear in this case. The trustee deprived the fund of land, and acquired instead securities hazardous in their nature. There was nothing to constrain him to this course, nor to justify it. Therein he also, in my judgment, committed a breach of trust within the clause in question.

The case does not indicate that the trustee designed to make or has made any personal profit out of the transaction. I am convinced that he entered upon it with the hope that it would subserve the interest of the trust. But having, knowingly, taken improper risks, he ought not now to complain if the *cestuis que trustent* insist he shall make them good. It is not necessary to consider whether the advice of counsel would relieve a trustee, because the counsel here referred to was clearly not the counsel of the trustee, and the opinion said to be relied on was not one which justified reliance. But it could hardly be contended that advice of counsel would relieve from the consequences of an act known to be a breach of duty.

The other question (respecting the valuation of the lands with which the trustee is charged) I find to be difficult of determination. It is not insisted here that the rule adopted below, which was that the trustee was chargeable with the value of the land in the year 1871, when he conveyed it away, was erroneous. The contention is simply that the value was not so great as was determined below. The difficulty is in determining the value at that date. This arises partly because it is difficult to fix a standard of value for property of this kind and at a time long past, and partly because of the very meagre evidence presented on the subject. After a master's report, sustained on exception, we ought not to interfere, unless the decree is clearly wrong.

Tuttle v. Gilmore.

The sales to Amelia Burnet Gilmore afford no aid in the solution of this question. It seems admitted that the consideration named in the deeds was largely in excess of the real value of the lands conveyed.

It appears that some of the land is low, and must be filled before being capable of being used for building purposes, for which alone it is said to be valuable. Some of it fronted on proposed streets, rendering it likely to become liable to assessments. Although nearly worthless for any purpose but building, there has been but one building erected on all the lots sold.

The trustee twice offered the lands for sale at auction about the time in question. He made actual sale of three lots only to two persons. The prices obtained approximate those fixed by the master. But he was unable to obtain bids for the other lots at prices more than half as great, although there was a numerous attendance. The other *bona fide* sales afford no criterion of value, for it appears the consideration was the debt of the *cestui que trust.*

From the evidence of the situation, quality and surroundings of the lots, and the sales and efforts to sell, there is not, in my judgment, sufficient to enable us to determine their value. The two sales are not sufficient to justify the deduction that the other lots were of relative value, in the face of the unsuccessful efforts to sell.

The opinion of three witnesses respecting their value was taken. The master adopted the opinion of one, and charged the trustee precisely what that witness testified the lots were worth. But his evidence was limited to a bare expression of opinion. He gave no reason, and testified to no fact, on which his opinion was founded. Such an opinion can have but little weight.

Another witness had been assessor in the locality in 1871 and the following years. He gives an estimate somewhat higher of the value. But, while he declares that his opinion was formed by other sales in the neighborhood, he does not describe those sales, nor compare the lands sold with those in question. He was not asked the valuation put upon the lands by him as

40

assessor in the year 1871. But it appears in the case that lots adjoining such as he estimates to have been worth from $500 to $2,000 in that year, were assessed in 1876 at the uniform rate of $100 per lot. If of like value (and that was the contention) so enormous a depreciation would seem to have called for some explanation.

The third witness, who, although he declared he was not an expert, was evidently such, gave reasons for his opinion and testified to facts on which it was founded. He compared these lots with tracts sold in the immediate neighborhood about the same time. These sales, in my judgment, form a better standard for the value of these lots than a sale of two of even adjoining lots, accompanied with persistent and unsuccessful efforts to sell others. The opinion of this witness seems to be further corroborated by the fact that the offers made at the auction sales were in almost exact accord with the prices he fixes.

Comparing the whole evidence, it seems to me that the opinion followed by the master, if any weight can be accorded to it, must be considered to be an estimate, not so much of actual value vested by the price one desirous of buying was willing to give, as of a speculative and imaginary value, which subsequent events have shown to have been illusory. As he supported his opinion by no reasons or facts, I think it ought not to have been adopted.

In this condition of the evidence I feel compelled to rely on that opinion which alone seems founded on facts which justify it, and which is otherwise corroborated. Taking that valuation, the trustee should be charged, for the value of the lots sold, the sum of $5,332, instead of the sum which he was actually charged. The difference is large, but, as the evidence stands, I am unable to avoid the conclusion that its weight is in favor of the smaller sum.

The decree below ought, therefore, to be to this extent reversed, and the record remitted, that a new decree may be made in conformity with these views, as to the amount with which the trustee should be charged for the value of the lands conveyed by him in violation of his trust. In other respects the decree

should be affirmed. This result entitles the trustee to costs in this court

*Decree unanimously reversed.*