25 N.J. Super. 406 (1953)
96 A.2d 298
IN THE MATTER OF THE ESTATE OF ROBERT E. NUESE, DECEASED.
Superior Court of New Jersey, Essex County Court Probate Division.
Decided April 2, 1953.
*407 Messrs. Carey, Schenk & Jardine (Mr. Thomas V. Jardine appearing), attorney for Robert E. Nuese, exceptant.
*408 Messrs. McCarter, English & Studer (Mr. Verling C. Enteman, Mr. Woodruff J. English and Howard Carter, Jr. appearing), attorney for Irving Trust Company, trustee.
CONLON, J.C.C.
Robert E. Nuese died on August 30, 1927 leaving the residue of his estate valued at $391,891.14 in trust to American Exchange-Irving Trust Company (now the Irving Trust Company). The trustee received the assets from itself as executor within a year or two after the death, but no accounting was filed with this court until the present first and final accounting. A supplemental account was filed but no question is raised as to it.
During the extensive hearings held in this matter the following facts were established. The deceased left surviving his widow Frances B. Nuese and his son Robert E. Nuese, the present exceptant. His will was a simple one. After a specific bequest to his wife he left the residue to his executor in trust with directions that of the income, $12,000 a year should be paid to his wife in monthly installments and the excess of income over that amount to his son. Upon the death of his wife, after provision for several monetary bequests, the balance of the corpus was to be turned over to his son, but not before the latter became 45 years old. The terms of the will made it of interest to the son that the income be maintained at a high level during the life of his mother.
The will contained the following provision which is pertinent to the issue presented:
"I hereby authorize and empower my said executor and trustee to invest the funds of my estate in such bonds, mortgages and preferred stocks as in its judgment afford reasonable security and produce an annual income of from five and one-half percent to seven percent, without reference to the laws and rules of court covering the investment of trustees and guardians. The trustee shall not be accountable for any loss of principal or failure of income resulting from these investments so long as it shall exercise good faith in the investment therein or retention therefor."
During the 21 years covered by the accounting in question the trustee received and disbursed some $382,000 of income, *409 and experienced a loss of corpus of $26,759.29 which is the subject matter of the pending exceptions.
It may be fairly concluded from the testimony adduced: (1) that the exceptant was in frequent consultation with the trustee during the administration of the estate and was fully informed of its conduct; and (2) that it was at the instance of the exceptant that he received periodic accounting in lieu of the formal presentation thereof to court, that course being followed in order to save him the expense and counsel fees incident to formal accountings.
All of the losses now complained of occurred some 15 or 20 years ago. Consequently the reconstruction of the details of the many transactions inquired into presented considerable difficulty.
There are three exceptions to the account which will be considered in the order of their presentation:

1. SELF DEALING IN MORTGAGE PARTICIPATION CERTIFICATES
A substantial portion of the assets of the trust were invested in mortgage loan participating certificates issued by the trustees in its individual capacity. A loss of $5,166.98 was experienced from this class of investment. The exceptant contends that the manner of investment constituted self-dealing, a practice which has been disapproved in a long line of cases culminating in Liberty Title and Trust Co. v. Plews, 6 N.J. Super. 196 (App. Div. 1950), affirmed 6 N.J. 28 (1950). It is not contended that in its handling of these mortgage participating certificates that the trustee gained any concealed profit. The exceptant's contention is that the trustee violated its obligation not to have a joint interest with its beneficiary in the investment; that its course of conduct comprised a violation of the interdiction described in Shanley v. Fidelity Union Trust Co., 108 N.J. Eq. 564 (Ch. 1927) and quoted in the Plews case, supra:
"They are our trustee and the law demands of trustees the utmost fidelity. It does not tolerate personal dealing with the trust estate *410 nor permit the making of a penny's profit. The rule is grounded in sound morals and is reflected in the supplicating words of the Lord's prayer, `Lead us not into temptation.'"
The evidence discloses that the trustee conducted a large trust department in which it had continuous demands for mortgage investments in varying amounts. It had no title department nor, so far as the evidence shows, was it in the mortgage lending business. It had a branch of its trust department whose function it was to acquire mortgage investments for dissemination among its many trust accounts. Before purchasing a mortgage it required an appraisal from the seller. These appraisals were, of course, suspect, but in addition thereto a committee of its directors or employees made an independent appraisal before purchase. After the purchase of a mortgage it was available either as a whole or by way of participating certificates to the various trusts which had need of that particular investment. There is no indication, at least so far as the instant case goes, that there was ever a transfer from one trust estate to another for the purpose of liquidation. In fact, it seems that in almost all cases the investment was transferred to the trust soon after its acquisition. The trustee made no profit from the transactions nor, not itself being in the mortgage lending business, could it be inclined to foister an undesirable mortgage investment upon an unsuspecting trust account. The only aspect of self-dealing involved was that the trustee reserved to itself the interest which had accrued on the mortgage between the time when it was acquired and the time when it was assigned to a specific trust act. During this period some mortgages were purchased for or retained in what was termed a "Surplus Account." To that extent the trustee was co-investor with its trusts in the mortgages in question, but the conclusion is clear that that situation was the inevitable result of the demand on the trustee for so many mortgage investments and did not emanate from any practice of investing its own funds in mortgage loans.
The procedure followed by the trustee was not in violation of the principle reviewed in the Plews case, supra. There is *411 no basis for finding either that the trustee made a "penny's profit" or that it subjected itself to the temptation to deal surreptitiously with its trust accounts for its own advantage. One or the other of those elements must be present to warrant a surcharge upon a trustee.
This exception is denied.

2. MORTGAGE INVESTMENT ON No. 216 GREENWICH STREET, NEW YORK
Much of the testimony was directed to this item which involved an investment of $42,000 and resulted in a loss of $20,362.51. The exceptant contends that the investment was illegal, imprudent, tainted with self-dealing, and did not evince a reasonable regard for diversification of investments.
The evidence shows that the Loomis Cold Storage Company purchased the property in question in 1924 and as part payment executed a mortgage for $62,000. The mortgage contained provisions for amortization and on December 13, 1927 the trustee purchased it in its individual capacity for the amount then due of $42,000. On January 11, 1928 the mortgage was assigned to the Nuese trust for the same amount with accrued interest. The owner continued to pay interest and amortization for about four years, reducing the principal to $38,000. The payments came into default and in 1933 the trustee foreclosed and took over the property. It was sold in 1937 for $30,000, which sale resulted in the loss to the estate.
Before the trustee purchased the mortgage in its individual capacity the property was inspected and appraised by a member of its board of directors and by a member of its mortgage and real estate department. It also procured an independent appraisal by Cruikshank Company, a well known firm of real estate appraisers. The latter's appraisal indicated a value of $45,000 for the land and $20,000 for the building or a total of $65,000.
The original investment was some $3,000 in excess of the 60% maximum fixed by the statute (R.S. 3:16-1; *412 N.J.S. 3A:15-1), but the court declines to surcharge the trustee on that ground alone in view of the exculpating clause in the will. Tuttle v. Gilmore, 36 N.J. Eq. 617 (E. & A. 1883). Furthermore, at the time it was purchased the mortgage had a good record of amortization, and by the time it went into default after the general collapse of real estate values the amount due was less than the prescribed maximum.
As to the prudency of this investment the exceptant argues that the trustee negligently ignored the fact that the building erected on the premises in question was a "specialty" in that it was being used as a cold storage warehouse and received its refrigeration from the adjoining premises. He argues that since no provision was made to preserve the right to continue the refrigeration facilities the investment was initially imprudent. The fallacy of that argument is that there is no indication that in considering the value of the property was consideration given to its use as a refrigeration plant. The evidence shows that it was a large building of heavy construction built for and adapted to use as a warehouse. The investment was not so imprudent as to warrant a surcharge.
Nor is there any evidence of self-interest or self-dealing. The only evidence in that respect is that the mortgage was purchased by the trustee in its individual capacity for the purpose of assignment to one of the trustee's trust accounts. Within a month of the purchase it was assigned to this trust, the trustee retaining only the interest for the period during which it held it in its individual capacity. It made no profit and had no duplicitous interest in the investment.
The failure to diversify the investments is not involved. True, this mortgage represented slightly more than 10% of the total estate, but in view of the testator's evident desire that mortgage investments be utilized, the trustee could not reasonably be expected to invest all of the funds in small amounts.
The exceptant objects generally to the manner in which the trustee invested in mortgage loans on the ground that *413 there was not a proper diversification of investment. While about two-thirds of the corpus of the trust was invested in mortgage loans, there is no indication that the loans were not reasonably diversified. The mortgages covered many properties in various parts of New York City and with few exceptions were in relatively small amounts. In view of the specific instructions in the will requiring the trustee to produce an income of from 5 1/2 to 7%, the trustee was justified in seeking this kind of investment. The losses were sustained during a period when virtually every investment declined in value and the evidence does not reveal any relationship between the so-called lack of diversification and the losses.
The exception to this item is denied.

3. DOUBLE COMMISSIONS
During the administration of the estate and during the moratorium and collapse of real estate values after 1932, the trustee took over the management of real estate which it had acquired through foreclosure. Exception is taken to items aggregating $1,229.80 which the trustee took as a commission of 5% on account of rents received while its real estate department was managing the properties in question. In some cases an agent was engaged to manage the properties, the agents being paid by the trustee from the commissions deducted. After other expenses of operation were deducted and the net sums paid into the trust, the trustee took an additional commission under the New York rates.
It is unnecessary to inquire into the propriety of that procedure since the rate of commissions to be charged was the subject of a specific agreement between the trustee and the beneficiaries. In April 1929, at the very inception of the trust, the trustee  by letter  agreed to the following terms set forth by the exceptant and his mother:
"This is to advise that both my mother and myself are agreeable to have the annual trustees' fees on income taken at present New York rates, and also that we are agreeable to having the trustees' final fee on the estate taken at the present New York rate."
*414 It is conceded that at the time this agreement was entered into there was no provision in the statutes of New York  nor was there in New Jersey  allowing a commission to be deducted for rents collected. Provision therefor seems to have been adopted during the depression in order to compensate trustees for the additional services involved in the management of real estate, a situation which had not previously been experienced. The trustee contends that the additional service which it was compelled to render with respect to real estate management was not contemplated in the 1929 agreement. However that may be, the court cannot re-write the parties' agreement. By its terms it was agreed that the trustees' fees should be at the then present New York rate. Since there was no provision at that time for the allowance of real estate commissions the charge is not warranted and the exception is allowed. If the allowance of this exception necessitates a readjustment of the fees on income the parties may present such a calculation.
The parties may submit a judgment in accordance with the foregoing conclusions and may appear on notice so that the matter of allowances may be determined.