Gilmore v. Tuttle.

AMELIA L. GILMORE and others

*v.*

GEORGE F. TUTTLE and others.

A trust was created to provide a home for a wife and her children; to raise a specified sum by a sale of certain lands, and "to invest in good securities" and pay the income of such sum to the *cestuis que trust*, with power to convey the homestead and "to change the investments at his (the trustee's) discretion from one good security to another"; and providing that the trustee should "not be liable or responsible for any other cause, matter or thing except my own willful and intentional breaches of the trust." The trustee sold part of the lands, taking therefor second mortgages to secure the bonds given for purchase-money, by the grantee, a married woman, alleged to have been at that time responsible. The lands sold consisted of town lots, and the trustee sold every alternate lot. It also appeared that the trustee

NOTE.—In *Rehden* v. *Wesley, 29 Beav. 213,* executors were directed to invest the residue in leasehold houses, and, in the meanwhile, "in government stocks in the Bank of England," to be held in trust. Each of them was to be responsible for and chargeable with such moneys only as he should actually receive, and not answerable or accountable for the others, nor for loss from depositing with any banker. Two executors proved, and one drew out a deposit from testatrix's bank and deposited it in another bank, in the joint names of himself and his co-executor, on January 20th, 1856; on September 3d, 1856, the latter bank failed.—*Held,* that both were liable, notwithstanding the indemnity clause, and also a request by the tenant for life to change such deposit.

In *Brumridge* v. *Brumridge, 27 Beav. 5,* a marriage settlement contained a provision that the trustees should be chargeable only for their own respective receipts and payments, acts and willful defaults, and not otherwise (the joining in receipts for form's sake notwithstanding); that one trustee paying or consenting to the payment of money to a

40

procured no appraisement of the value of the premises mortgaged; did not ascertain for how much they rented, and did not himself think they were worth double the encumbrances thereon, and that the sales were made without the direction or approval of the wife.—*Held,*

(1) That selling every alternate lot in such a tract, with the intention of benefiting those remaining by the subsequent improvements on those sold, was a fair exercise of discretion.

(2) That the trustee was liable for the loss to the estate by reason of his taking the second mortgages for the lots sold, and that the clause above quoted in the trust deed did not exonerate him; nor the fact that the trustee, being in doubt as to the propriety of accepting such securities, consulted counsel, who advised him that such mortgages were proper investments (it appeared that the trustee, who was himself a counsellor at law, was not satisfied with the investments, but only intended that they should be temporary, and had never been able since then to convert them into "productive, absolute securities"); nor the fact that the grantee and obligor, when the bonds were given, was financially responsible.

(3) That the proper measure of indemnity is the value of the property at the time of sale, with interest.

---

Bill for relief. On final hearing on pleadings and proofs.

*Mr. R. Wayne Parker,* for complainants.

*Mr. J. W. Taylor,* for defendants.

---

co-trustee, with a *bona fide* intent to accelerate the performance of the trust, should not be responsible for the conduct or misconduct of such co-trustee, nor answerable for his application or misapplication of such money, or any part thereof; nor for any loss incurred in making investments or depositing the funds in any bank during the life-time of the wife, by and with her consent; nor for any loss or damage in or about the execution of all or any of such trusts or powers, without the respective willful default of such trustee or trustees. The defendant trustee denied his liability for a loss caused by his co-trustee, because he had taken only a formal or nominal part in the execution of the trust, but he admitted that he had signed some receipts, after his co-trustee had signed, which enabled such co-trustee to obtain part of the funds.—*Held,* that he was liable, and that the indemnity clause did not exonerate him from the consequences of any acts by which the funds had been misapplied.

In *Brice* v. *Stokes, 11 Ves. 319,* a will directed that the executors should not be answerable or accountable for any loss which might

Gilmore *v.* Tuttle.

THE CHANCELLOR.

The bill is filed by Amelia L. Gilmore, late wife of James R. Gilmore, and her infant son, for relief against the defendant, George F. Tuttle, as trustee under a declaration of trust dated March 2d, 1869. The other defendants, besides the trustee, are the other children of Mr. and Mrs. Gilmore. By the declaration just mentioned, it was recited that a separation had taken place on the 5th of December, 1867, between Mr. and Mrs. Gilmore (they were subsequently divorced, on her application, in or about 1871; and, within a short time thereafter, Mr. Gilmore married again), and that, in pursuance of the terms and agreement for separation, Mr. Gilmore and his wife, in order to secure a fund for her and their four children, on that day (December 5th, 1867), conveyed to Mr. Tuttle, in fee-simple, three tracts of land in the town of Orange, in this state, one containing seventeen and thirty-four one-hundredths acres, another two acres and seventy one-hundredths, and the third, a lot of fifty feet front by two hundred and forty feet deep.

The trust, in respect to the property, was declared by Mr. Tuttle substantially as follows: That he held the premises only in trust, first, to raise and pay, within six months from the date of the declaration, a specified sum for counsel fees and legal expenses theretofore incurred by

happen, of all or any part of the estate, so as such loss be not through their willful neglect or default; that one should not be answerable for the acts, receipts, payments or defaults of the others, but each one for his own only. One executor, with the consent of the husband of the *cestui que trust*, knowingly permitted money to remain with the other executor on his personal security, such money having been derived from a sale of the testator's lands, under a power requiring both executors to act.—*Held*, that the first-named executor was liable for its loss.

In *Sadler* v. *Hobbs, 2 Bro. C. C. 114*, the testator inserted in his will the common clause that his executors should not be liable for the acts of each other. Both executors joined in drawing bills of exchange for £7,000, and the proceeds were paid to one of them, and remained in his hands for seven years, when he became bankrupt.—*Held*, that the other executor was responsible for the amount. To the same effect are *Underwood* v. *Stevens, 1 Meriv. 712; Bone* v. *Cooke, 13 Price 332; Dawson* v. *Clarke, 18 Ves. 254.*

Gilmore *v.* Tuttle.

Mrs. Gilmore; secondly, to raise, by the sale of a specified portion of the tract of seventeen acres and thirty-four one-hundredths, or some part thereof (provided such sale could be advantageously made), $12,000; and if the sale of that part of the tract should not produce so much as that sum, then, as soon as an advantageous sale could be made, to make up the deficiency by a sale of the other property before mentioned, or some part thereof, and to pay to Mrs. Gilmore $2,000 of the $12,000, in cash, for her own free use and disposal, and to hold $10,000 in trust for her during her life, and to invest it, or some part of it, in a homestead for her, and, as trustee, to hold the title of the property which might be so purchased, and to invest in good securities so much of the $10,000 as might remain in his hands after purchasing the homestead, and to pay to her the annual interest thereof, he to have power to convey the homestead, if it should seem desirable, and, with the $10,000, or any part of it, to purchase another homestead if it could be done to advantage, and to change the investments at his discretion from one good security to another, provided that in no case the sum held in trust and invested should be reduced below $10,000; and to pay over, from time to time, to Mrs. Gilmore, for her own free use and disposal, the

In *Pride* v. *Fooks, 2 Beav. 430*, the trustee was, by the will, to be only accountable for losses happening through his willful neglect and misconduct.  The will directed him to invest in consols, instead of which he invested on a mortgage of real estate.—*Held*, that he was liable for whatever amount of consols the fund paid into his hands would have brought on that day, together with the accumulations.

In *Dix* v. *Burford, 19 Beav. 409*, a mortgage of £400 was given to two executors in trust to pay the income to A. for life, and, at A.'s death, to distribute the principal, with the clause that they should be chargeable only for their respective receipts, payments, acts and willful defaults.  One executor received the £400 during the life-time of A., and misapplied it, continuing the payment of the interest, however, to A.—*Held*, that the other executor was not exonerated by the indemnity clause, which covered only any depreciation in the mortgaged premises, or inability in the mortgagor to pay, and not neglect to take steps necessary to secure the fund.

In *Stiles* v. *Guy, 4 You. & Coll. 571, 1 Mac. & G. 422*, under a will containing a similar clause, and appointing three executors, A., B. and C., to hold the estate as trustees, with directions to get in testator's book

increase, if any there should be, of the $10,000 realized from the investment or investments, and, on her death, to hold the $10,000 so invested, in trust for Amelia L. Gilmore, the daughter of Mr. and Mrs. Gilmore, with certain limitations and gifts over, set forth in the declaration; and, thirdly, if any money arising from the sale or sales of real estate before mentioned should remain in the hands of the trustee, or if any of the real estate should remain unsold after raising the $12,000 with interest, from the date of the declaration of trust, after paying all taxes, assessments and expenses, and after fulfilling the trust declared in the first and fourth sections of the instrument, then to hold the surplus money and the residue of the real estate in trust for the benefit of the sons of Mr. and Mrs. Gilmore and the issue of any deceased son, and to sell that real estate when the youngest of the sons should reach the age of twenty-one, or as soon thereafter as an advantageous sale could be effected, and to sell it, or any part of it, before the time when the youngest of the sons should reach majority, if it should seem best so to do, provided Mr. Gilmore should give his consent; and to divide the sum of $15,000, if so much should be realized, and, if not, then so much as the amount should be, in equal parts, among the sons of Mr. and Mrs. Gilmore, the issue

debts and securities not approved by them, they all proved, but B. and C. left the management of the trust to A., who was an attorney in great credit, and had been entrusted by the testator with large sums of money, amounting, at testator's death, to £10,000; secured by A.'s notes and receipts; B. and C. never took any steps to enforce payment of this sum from A., who, six years after testator's death, became bankrupt.—*Held*, that by proving the will, both B. and C. became liable to make good the loss occasioned by A.'s bankruptcy.

In *Wilkins* v. *Hogg, 3 Giff. 116*. besides the ordinary indemnity clause, this followed: "And particularly that any trustee who shall pay over to his co-trustee, or shall do or concur in any act enabling his co-trustee to receive any moneys for the general purposes of my will, or for any definite purpose authorized by my will, shall not be obliged to see to the due application thereof, nor shall such trustee be subsequently rendered responsible by any express notice or intimation of the actual misapplication of the same moneys." The three executors were directed to effect an insurance of £4,000 on the life of one S., for the benefit of S.'s children. They did so in 1854, and on her death, in 1857, the sums due on the policies were paid to one of them, the others

Gilmore *v.* Tuttle.

of any deceased son to take the share which its parent would have had if living; and if more than $15,000 should be so realized, then to hold the excess in trust for and to divide it equally among the four children of Mr. and Mrs. Gilmore, with substitution of the issue of any deceased child for its parent; and, fourthly, in case Mr. Gilmore should not pay to Mrs. Gilmore a specified sum, on the first of each month, for the support of each of their children so long as the children should reside with their mother, or elsewhere away from their father with his consent, according to the provisions of the agreement of separation, the trustee was to supply the deficiency out of such surplus fund belonging to the children as might be in his hands, and to mortgage or sell, at his discretion, so much of the real estate remaining unsold and held in trust to make up the arrears, provided that that should be done, if possible, in such a way as to produce no inequality between the shares of the children.   The deed contained, also, the following provision :

"And, lastly, it is understood and agreed, as a condition of the trust hereby assumed and declared, that I, the said George F. Tuttle, shall not be liable or responsible for any other cause, matter or thing, except my own willful and intentional breaches of the trust herein expressed and contained."

---

alleging that they permitted him to receive the sum, on the distinct understanding that he was to deposit it forthwith in a designated bank, in the joint names of the three trustees; that he informed them that he had done so, but, in fact, had appropriated it to his own use. On a suit by the children of S.,—*Held*, that the co-executors were not liable, coming directly under the above-stated clause.  See, also, *Westley* v. *Clarke, 1 Eden 357*, a case disapproved, however, in *Sadler* v. *Hobbs, 2 Bro. C. C. 114.*

In *Ames* v. *Armstrong, 106 Mass. 15,* a testator directed that the judge of probate should not require any sureties of his executors, either in that capacity or as trustees.. Under the statute, they gave a joint and several bond without sureties.—*Held*, that one was liable thereon for the acts of the other in appropriating to his own use the proceeds of sale of certain bank stocks and coupons.  And, see, the cases cited therein as to liabilities on such bonds, and, also, *Braxton* v. *Albert, 25 Ind. 82; South* v. *Hoy, 3 Mon. 88; Hughlett* v. *Hughlett, 5 Humph. 453; Clark* v. *Niles. 42 Miss. 460; Edes* v. *Garey, 46 Md. 24; Perry* v. *Campbell, 10 W. Va. 228.*

Gilmore v. Tuttle.

By writing, signed and sealed by them, upon the deed, Mr. and Mrs. Gilmore declared that they had read the declaration of trust, and approved of its terms and conditions.

The bill avers and charges that the raising of $12,000, with interest from the date of the declaration of trust, by sale of the property, or part of it, and the payment thereout of $2,000 to Mrs. Gilmore, with interest, and the investment of the remainder of $10,000 for her for life, the payment to her of the income thereof, and the raising and payment to her of the sum allowed for each of the children residing away from their father, as mentioned in the fourth section of the declaration of trust, were, by the terms of the declaration, made the first and paramount duties of the trustee. It states, also, that all the management of the trust was left by Mrs. Gilmore entirely to the trustee, and that she has received from him certain sums of money over the $2,000, and part of the income of the residue, and part of the sum due her for the maintenance of the children, irregularly up to two years before the filing of the bill, when the arrears had accumulated to over $1,200, and that, about June, 1871, the trustee gave her possession of the house where she now resides, which he had purchased as the homestead, as the bill states, at an expense of $3,700, subject to a mortgage of $600 thereon.

In *Mordecai* v. *Boylan, 6 Jones Eq. 366,* four executors were appointed, three living in North Carolina and one in Mississippi. No security was to be required of them, and they were not to be liable for the acts, negligences and omissions of each other. One executor, the plaintiff, qualified in North Carolina, and the one in Mississippi qualified there. The estate was very large, consisting of lands in both the states named, and bonds &c. from debtors in both states. The assets in North Carolina were not sufficient to satisfy all the pecuniary legacies.—*Held,* that the executor in North Carolina was not obliged to take out letters in Mississippi, to collect debts &c., there, because one executor, resident there, was presumably nominated for that express purpose; and that this presumption was aided by the fact that they were excused from all responsibility for each other's acts.

A provision in a deed of assignment for the benefit of creditors, that the assignees shall not be held liable for any losses, insolvency or defaults that shall happen in the execution of the trust, unless in case

Gilmore v. Tuttle.

The bill alleges that the complainants have discovered that, previous to the end of the year 1872, the trustee had made conveyances of parts of the property mentioned in the declaration of trust, as follows: First—A part to Dennis Kennelly and others, by deed dated June 3d, 1868, for a consideration of $619. Second—To Amelia B. Gilmore, the then wife of Mr. Gilmore, ten tracts, for a consideration of $18,000, by deed dated August 28th, 1871. Third—Two other tracts to her, by deed dated March 4th, 1872. Fourth—Nine lots to her, by deed dated May 5th, 1872, for a consideration of $6,472.76. Fifth—Another lot to her, by deed dated August 28th, 1871, for a consideration of $500.

The bill states that, with the exception of the sums paid over to Mrs. Gilmore, the complainant, as before mentioned, the whole of the consideration of those deeds was, from time to time, accepted by the trustee in second mortgages, which have since proved utterly worthless, and is entirely lost, while the lands have long been in the hands of honest purchasers, against whom no lien for the purchase-money could be enforced; that the lots so sold were taken out of the property in such manner as to leave the balance of the tract in small parcels, which are almost valueless at the present time, or in any event or manner, unless the whole neighborhood were improved and built up in such small lots. It states, also, that the sales and the receipt of the consideration moneys in worthless securities, were entirely without the knowledge, assent or consent of the complainants, and that they had nothing to do with

of willful neglect of duty or want of proper care and fidelity on their part, does not alter their responsibility (*Hennesy* v. *Western Bank*, 6 W. & S. 300; *Gordon* v. *Cannon*, 18 Gratt. 387; *Ashurst* v. *Martin*, 9 Porter 566; *Whipple* v. *Pope*, 33 Ill. 334. See *O'Fallon* v. *Polk*, 13 Mo. 262); although, in some cases, such provision has been held to avoid the deed, because restrictive of the assignee's legal duty and liability (*Litchfield* v. *White*, 3 Sandf. 545, 7 N. Y. 438; *Metcalf* v. *Van Brunt*, 37 Barb. 621; *Olmstead* v. *Herrick*, 1 E. D. Smith 310; *Hutchinson* v. *Lord*, 1 Wis. 287; *True* v. *Congdon*, 44 N. H. 48; but see *Jacobs* v. *Allen*, 18 Barb. 549; *Baldwin* v. *Peet*, 22 Tex. 708).—Rep.

Gilmore *v.* Tuttle.

them, and that those sales for such considerations were not proper or legal, and are breaches of the trust set forth in the declaration of trust, and that the trustee is accountable in this court for such moneys as have been so lost by him in those sales. It states, also, that the remainder of the lands are encumbered with taxes which have not been paid by the trustee, and that they ought to be sold in whole or in part for the purpose of the trust.

The bill prays an answer, and that the trustee may set forth a just and true account of all his dealings with the trust property, and that it may be decreed that the sales and transactions mentioned and complained of in the bill were improper and illegal, and that the trustee is accountable for them, and that he may be decreed to account, as trustee, in this court, for and pay over all moneys which have been so lost, and the loss and damage to the trust estate, and to come to an account of all moneys or property for which he is accountable as trustee, and to pay to the complainant Mrs. Gilmore all arrears due her for interest or support of the children, and that a proper decree may be made, upon the accounting, by this court, for the enforcement and fulfillment of the trusts by the trustee, or some other proper trustee, to be appointed by the court, and that the complainants may have other and further relief, and especially that, if it be thought advisable, a sufficient portion of the remainder of the lands be sold, by order of the court, to make up such sums as to this court it seems equitable should be made up.

The trustee, by his answer, admits the execution by him of the declaration of trust, and that he entered upon the execution of the trust accordingly, and that he has sold the property in question, stated in the bill, to Dennis and Michael Kennelly and Mrs. Amelia B. Gilmore, and alleges that he has received all of the consideration for the conveyances to the Kennellys in cash, and charged himself therewith as trustee, and expended it in payments required to be made by him under the declaration of trust; and that the

tracts secondly and thirdly described in the declaration of trust, still remain in his possession undisposed of. As to the land sold to Mrs. Amelia B. Gilmore, he states that the complainant Mrs. Gilmore was urgent that he should make some sale in order to produce the fund of $10,000; that he had made an effort to make a sale, but the property had not, at the auction, brought such a price as was satisfactory to Mr. Gilmore; that, subsequently, Mr. Gilmore applied to him and requested him to sell certain portions of the tract of seventeen acres and thirty-four one-hundredths, to his then wife, Mrs. Amelia B. Gilmore, the sales to be made in the plots or tracts in which they were subsequently, in fact, made; that plan, which was after the manner of sale in alternate lots, being suggested because the improvements which the grantee was expected to put upon the property would enhance the salable value of what remained unsold; that the trustee at first objected to the sale, because it was unnecessary to sell so much in order to produce the fund of $10,000, and that, thereupon, Mr. Gilmore complained to him of the refusal as being prejudicial to the interests of the trust and the beneficiaries thereunder; to the force of which considerations the trustee at length yielded and consented to make the sales; that when Mr. Gilmore and his present wife proposed good security for the consideration money of the conveyances by the bonds and mortgages, which he, on the delivery of the deeds therefor did receive, the trustee had doubts as to the propriety of receiving the securities thus offered, and applied to a counsellor at law of this state, of long standing, and of much experience in legal matters, as his counsel, and asked his opinion as to whether he should accept the securities proposed, and the counsel, after being fully informed as to all the facts, and that the mortgages which were offered to the trustee for the consideration of the conveyances were second to other mortgages on the same property, advised the trustee that such securities would be a sufficient and proper investment for him, as trustee, to make, and that thereupon he delivered the deeds

and took the bonds and mortgages therefor, which he still holds; that at the time he had been informed, and believed, that the grantee, Amelia B. Gilmore, was possessed of a large amount of property, and was reputed to be of large means; and he also avers that, in making the sales to her, he was actuated solely by a desire to do the best in his power for the trust estate in his hands, and for the benefit of those interested therein, and that he has derived no personal benefit whatever therefrom; and he submits, in view of all the facts, that in making those sales he is not justly or equitably chargeable, liable or responsible for any "willful and intentional" breaches of the trust.

On the hearing, the liability which it is sought to establish in this suit was put upon two grounds only: one, the manner in which the sales of the lots on the tract of seventeen and thirty-four one-hundredths acres had been made, and the other the character of the securities taken as consideration for the sales to Mrs. Amelia B. Gilmore. As to the first, it does not appear that there was any want of discretion on the part of the trustee in so making the sales. No witness is produced who testifies that such a method is injurious to the property, and there is reason to assume that, in view of the fact that it was proposed to sell the property in building lots, for improvement, that that method was not only unobjectionable, but the most advantageous that could have been adopted under the circumstances. At all events it was a fair subject for the discretion of the trustee, and he appears to have exercised his discretion in regard to it, fairly.

As to the second ground: It appears clearly that, by the sales to Mrs. Amelia B. Gilmore, a large part of the tract of seventeen and thirty-four one-hundredths acres was almost entirely lost to the estate. Out of all the securities (they were all second mortgages) taken for the consideration thereof, only $1,000 were realized by the trustee, and that money was obtained by the assignment of one of the mortgages. For the rest nothing was realized, the first mort-

gages having been foreclosed, and the properties producing at the sale nothing for the second mortgages. The bonds, too, are worthless, the obligors therein, Mr. and Mrs. Gilmore, being utterly insolvent. The counsel for the trustee insists that, under the provision of the declaration of trust that the trustee shall not be liable or responsible for any other cause, matter or thing, except his own willful and intentional breaches of the trusts, the trustee ought not, under the circumstances of the case, to be held responsible for the loss so incurred by the trust estate, especially since the trustee, having doubts about the propriety of accepting the mortgages for the consideration of the conveyances, acted upon the advice of counsel, who was fully informed of all the facts.

It appears, by the testimony of the trustee, that the complainant Mrs. Gilmore did not know of the sales in question; that she never made any request that they should be made, though she did make requests, in general, that sales should be made of the property to raise the $10,000. He says he did not inform her that he had made those sales until after the deeds were passed, and, indeed, that that was the fact in regard to nearly all the sales which he made. He says, also, that at the time of the transaction of the sales to Mrs. Amelia B. Gilmore, he had very considerable doubts about them, and spoke to a lawyer, who was acting as his adviser; that the latter told him, as his counsel, that the securities which were offered to him (the second mortgages) were proper securities—proper investments; that the intention at the time was, that this (the accepting of second mortgages) would be a mere temporary matter, and that productive, absolute securities were to be speedily substituted for those which he was asked to accept; that he endeavored for some time to get those securities, but never succeeded, and that the crash of 1873 came, and after that it was utterly impossible to get any change of the securities at all. To the question, whether his counsel told him that second mortgages were legal investments of trust funds, he

Gilmore. *v.* Tuttle. ·

answers that the latter did not say so in so many words, that they were a proper investment; that Mrs. Amelia B. Gilmore was possessed of a large amount of property, and that her bond was worth a good deal. To the further question, whether he did not (being a counsellor at law himself) know at the time that it was not legal for a trustee to invest trust funds in any but a certain class of securities, which do not include second mortgages, he answers, " No, under the circumstances. There were circumstances under which they were bought such as to make me regard them proper, under the advice of counsel." It appears, also, by his testimony, that he did not procure formal appraisements of the values of the property to be made, when he took the mortgages; that he did not think they were worth double the amount of the encumbrances, and does not think that he found out at the time for how much the properties were rented. He also says that his information and belief as to the security afforded by the bonds and mortgages, that it was sufficient for the money invested in them, was based partly on the advice of his lawyer in that respect. He also says that all the properties upon which the mortgages were, were improved and built upon with dwelling-houses, and that they were all worth more than the amount of the mortgages upon them, respectively, as real estate was then valued, according to the best of his judgment and information at the time, and that he had regard to the responsibility of the security afforded by the bonds.

Whether this transaction be considered as a sale of trust property for second mortgages for payment, or as an investment of trust funds, the liability of the trustee cannot be doubted. The indemnity clause, to which reference has been made, providing that the trustee is not to be liable or responsible for any other cause, matter or thing, except his own willful and intentional breach of the trust, will not exonerate him from the consequences of a breach of his trust. *Hill on Trustees 314, 383; Mucklow* v. *Fuller, Jacob 198; Langston* v. *Ollivant, Cooper 33; Fenwick* v. *Greenwell, 10*

*Beav. 412; Drosier* v. *Brereton, 15 Beav. 221; Crane* v. *Hearn, 11 C. E. Gr. 378.*

In *Drosier* v. *Brereton*, a farmer became bankrupt, and two friends, in order to assist his family, purchased the stock and crops from his assignees, and continued to carry on the business at their own risk and expense, and sold off the stock, and, in consequence of a fortunate harvest, realized a profit of about £1,400, which they invested in several mortgages; subsequently they executed a deed, by which they agreed and admitted that they would stand possessed of the sum of £1,000 on trust, to invest it in the funds or on "real securities," and receive the dividends and pay the same to the bankrupt and his wife, for life, and afterwards pay the capital to their children. The deed contained a proviso, that it was "declared and agreed that the trustees should be chargeable only for such moneys as they should actually receive, notwithstanding their signing any receipt for the sake of conformity, and that any one of them should not be answerable for the other of them, or for the acts, receipts, payments, neglects or defaults of the other of them, but each for his own acts &c. respectively, and that they, respectively, should not be answerable for any banker &c., nor for the rise or fall in the prices or value of stocks, or the insufficiency or deficiency in the title or value of any security or securities, stocks or funds in or upon which the trust moneys or any part thereof, should be placed out or invested, nor for any other misfortune, loss or damage which might happen in the execution of the trust, or in relation thereto, except the same should happen by or through their own willful default, respectively." They loaned the trust moneys on a second mortgage on house property greatly out of repair, and the principal part was lost. It was held that they were liable as for a breach of trust, notwithstanding the indemnity clause, and that it made no difference how the trust was created, whether it was for a valuable consideration, or, as in that case, by the voluntary gift of the trustees themselves.

Gilmore *v.* Tuttle.

In *Fenwick* v. *Greenwell*, by marriage settlement, it was covenanted and agreed that £5,000 consols, part of the wife's property, should be transferred to trustees upon certain trusts for the husband, wife and children. At the time of the settlement, a sum of £4,946 was standing in the name of the wife. The trustees took no steps to enforce a transfer, and it was sold out and misapplied by the husband. There was an indemnity clause that they should not be liable for "any casual or involuntary loss without their willful default, but for such moneys only as should actually come to their hands." It was held that they were personally responsible for the loss.

In *Mucklow* v. *Fuller*, there was an indemnity clause declaring that the trustees were to be chargeable with or accountable for such moneys only as they should actually receive, and not to be answerable or accountable for each other, but each for his own acts, receipts, payments, neglects or defaults only, and not for any moneys for which they should join in any transfer, or sign any receipt for conformity; and they were not to be answerable for any banker with whom they might deposit the trust moneys, or for any other loss, unless it should happen through their willful default. It was held that that clause did not exonerate one of the trustees (there were two) from the loss occasioned by a debt, due from the other, having been suffered to remain outstanding until it was lost. The lord chancellor said in that case: " The question is, whether, looking at the contents of the will (the trust was created by will), and at his (the trustee's) having proved it, he has not involved himself in a liability that he had no conception of. I cannot but think it most dangerous to lay it down that, with such a clause as this, he can prove the will, and then say that some one else shall perform the trusts."

In *Langston* v. *Ollivant*, there was an indemnity clause declaring that the trustees should not be answerable for any loss which might happen without their willful neglect or default. The trust was created by the will of a father, who

Gilmore *v.* Tuttle.

left a legacy of £1,000 to his daughter, and £500 to the defendants, the trustees, in trust, to place the same out upon real or personal security as should be thought good and sufficient, to the use of his daughter for life, and, afterwards, to and amongst her children. On the marriage of his daughter, the trustees lent to her husband the amount of the legacy of £500, on his bond, and, at the same time, lent him £600 of their own money, on the same security. It appeared that the husband, at the time of his marriage, and of the making of the loans, was a trader in good credit and circumstances, and that it was not until some years afterwards that he failed. Though in that case the trustees had the power of loaning upon personal security, given to them by the will, and there was a clause of indemnity in case of loss, and there was the strongest evidence of their belief in the sufficiency of the security in their loaning their own money upon it, it was held that, under the circumstances, they were liable for the loss.

In the case in hand, a very considerable and valuable portion of the trust estate was sold and the price invested in second mortgages, and the consideration for the conveyances has been entirely lost, and the property is lost to the trust estate. The trustee was aware, when he made the investments, of the requirement of the declaration of trust, that his investments should be made on good securities, and he knew what the law demanded of him in that respect. He had doubts as to the propriety of the investments. He says he had "very considerable doubts" about it, and, though he was advised by his counsel that the securities which he took were proper investments, he was not himself satisfied with them, but intended that they should be merely temporary, and that, to use his own language, "productive, absolute securities" should be speedily substituted for them. The financial panic frustrated this design. He contemplated no fraud, but, nevertheless, he has involved himself in liability, and it is incumbent on him to make good the loss which has been sustained. In accepting the trust, he

assumed the control and management of the trust property according to law, and it was committed to him in the confidence that he would observe the reasonable requirements of the law in managing it.

But it is insisted, by his counsel, that, if he is liable, the measure of indemnity to the trust estate will be the value of the property at this time. When it is considered that there is no sale for it now, owing to the depressed condition of the real estate market consequent upon the revulsion, and that there was an active demand for it at a high price at the time when the trustee sold it, it is manifest that such a rule would be unjust to the *cestuis que trust*. The measure of indemnity is the value of the property at the time when it was sold, and the trustee, while he should pay interest upon that value, should, of course, have allowance for any moneys which he may have paid on account of the consideration, whether collected upon the mortgages or otherwise.