Andrew S. Buckelew died on October 23d 1917, leaving a last will and testament in which he named Freehold Trust Company and two individuals as executors. Shortly after filing an inventory on December 19th, 1919, the individual executors were discharged, and the trust company continued to manage the estate.
The second paragraph of the will provided:
"I give and bequeath to my daughter Olevia W. White, wife of Frank White, of Red Bank, the interest from the sum of Twenty-five Thousand Dollars, for and during the term of her natural life, said sum of Twenty-five Thousand Dollars to be invested upon Bond and Mortgage and to be held in trust by my executors hereinafter named, and the interest therefrom to be paid to my said daughter Olevia W. White, during the term of her natural life, and at her death, said sum of Twenty-five thousand dollars, to be equally divided among the five children of my said daughter; Olevia W. White, viz: Ray White, Carrie White, Andrew S. White, Meta White and Elsie White, or the survivor or survivors of them, share and share alike." *Page 82 
A codicil to the will purported to reduce this $25,000 trust fund to $20,000 and to give the $5,000 representing the amount of the reduction to one Allie M. Buckelew. However, a caveat was filed to the codicil. There was an adjustment of the dispute between the parties; the codicil never became operative and the original amount of $25,000 mentioned in the will was set up as a trust fund by the executors. On May 1st, 1920, the trust company entered into a trust agreement with Olevia White, the life tenant, in which it refers to the fact that securities in the value of $25,000 had been set up by the executors in the trust fund, and thereby agreed to "continue to hold said securities as trustee under the last will and testament of Andrew S. Buckelew and the codicils there annexed."
Freehold Trust Company was subsequently succeeded as trustee by The Freehold Trust Company, and the latter company has continued to administer the $25,000 as a single trust fund. The Freehold Trust Company filed an account in the Orphans Court of Monmouth county on March 18th, 1938, covering its administration of the fund. The account was excepted to.
This proceeding is on an appeal from that part of an order of the Orphans Court confirming a master's report allowing the fourth, fifth and sixth exceptions to said account. The fourth exception refers to an investment made by the trustee in a bond of the borough of Barrington in the sum of $1,000. The fifth and sixth exceptions are to investments made by the trustee in County Guaranty Mortgage Company and Monmouth Title and Mortgage Guaranty Company certificates.
On December 9th, 1926, the trustee invested $1,000 in a negotiable bond of the borough of Barrington (Exhibit E-26), and failed to have the bond registered in its name as trustee. In its accounting the trustee prays allowance on this item for depreciation to the extent of $300.
On April 1st, 1927, the trustee invested the sum of $2,000 in a participation certificate of County Guaranty Mortgage Company (Exhibits E-12, E-13, E-27). The participation certificate was issued pursuant to a trust agreement (Exhibits *Page 83 E-16, E-17); by its terms it entitled the holder to "an undivided co-ordinate share of the same amount in the principal sum secured by the bonds and mortgages deposited" (ExhibitE-27). The exceptants contend that the holder of participation certificates was not the owner of any particular bond and mortgage or any group of bonds and mortgages, but merely owned a note of the Guaranty Company. They also contend that the "nature of this security changed as additions or withdrawals were made from time to time by the mortgage company."
On January 10th, 1929, the trustee invested $2,500 in gold bonds of Monmouth Title and Mortgage Guaranty Company (ExhibitsE-12, E-13). It is alleged that these bonds were never registered nor ear-marked by the trustee (Exhibit E-28). These gold bonds were issued practically in the same way in which the participation certificates were issued. It is argued that the purchasers of such bonds had no apparent interest in the bonds and mortgages which were deposited as a basis for the issuance of the bonds (See Exhibit E-28 and page 7 of Exhibit E-18). It is charged that the bonds were a "fluctuating, unspecified group, depending upon additions, issuance and sale of further gold bonds to the public, and withdrawals or substitutions of the deposited securities." The bondholders evidently exercised no control over the securities which were deposited. That right resided in the company issuing the gold bonds
The exceptants assert that before making the investments in the participation certificate and the gold bonds, that the trustee made no investigation of the financial condition of the company issuing them and obtained no record or list of the mortgages and bonds deposited as security for the payment of the participation certificate and the bonds.
The record shows that on January 10th, 1929, Joseph McDermott was the president and a director of said Freehold Trust Company, and a stockholder and a director of the Monmouth Title and Mortgage Guaranty Company. The secretary of said Freehold Trust Company, Jennie R. Baird, was a stockholder of the title company at the time of the purchase aforesaid (page 104, Exhibits E-31,E-12 and E13). *Page 84 
The title company at the time of the purchase was a depositor in said Freehold Trust Company (page 214 of record).
The substituted trustee, The Freehold Trust Company, prays allowance for depreciation of $1,800 on the face value of the $2,000 participation certificate of County Guaranty Mortgage Company; and for depreciation of $1,925 on the face value of the $2,500 gold bonds of the Monmouth Title and Mortgage Guaranty Company.
The exceptants and remaindermen heretofore filed a bill in this court seeking an accounting from The Freehold Trust Company from 1920 to date, and alleging liability for the entire administration. That suit was discontinued when an agreement and stipulation was subsequently entered into by The Freehold Trust Company agreeing to withdraw the accounting filed by it in this court and in the place thereof, filing in the Monmouth County Orphans Court a "full and complete accounting of the entire administration by Freehold Trust Company, as executor and trustee under the will of Andrew S. Buckelew, and by itself, as substituted executor and substituted trustee under said will," and to "assume any and all liability, if any, which may be imputed to Freehold Trust Company, or may exist * * * by reason of its administration as executor and trustee of the trust fund created in said will." This stipulation was filed in the Orphans Court of Monmouth county.
The exceptants to the account of The Freehold Trust Company charge that the trustee violated its duties as trustee in making the investments aforesaid, and in negligently administering and retaining the investments until they became practically worthless.
The appellant, The Freehold Trust Company, takes the position that since the testator on December 25th, 1915, executed a codicil to his will and reduced the trust fund mentioned in the will from $25,000 to $20,000, and bequeathed the difference to his son, Allie M. Buckelew, which latter sum the said Allie M. Buckelew subsequently relinquished all right or claim to and turned back to the estate, the trustee, in consequence, was released from investing the said sum of $5,000 in the securities mentioned in the second paragraph of the decedent's will. *Page 85 
On May 1st, 1920, an agreement was entered into between the trustee, Freehold Trust Company, and Olevia White, the life tenant, by the terms of which the trust company contracted to hold in trust not only the $20,000 provided for in the will but the additional sum of $5,000 which the codicil bequeathed to Allie M. Buckelew. The trust company claims that the trust which the testator reduced to $20,000 by the bequest in the codicil to Allie M. Buckelew, was afterward voluntarily increased by the combined action of Allie M. Buckelew, Olevia White and the trustee. The trustee claims that to the extent of the additional $5,000 the terms and conditions of the 1920 agreement are controlling and not the provisions of paragraph two of the will; and consequently the remaindermen have no standing to object to the investments involving the $5,000. It argues that the terms of this agreement do not restrict it to investments in bonds and mortgages as the original terms of the will do.
The provisions of the agreement of May 1st, 1920, which are pertinent read as follows:
"That the said Freehold Trust Company shall continue to holdsaid securities as Trustee under the last will and testament ofAndrew S. Buckelew, and the codicils thereto annexed, and toinvest and reinvest the moneys held thereunder * * *." (Italics mine.)
And
"It is further understood and agreed that the party of the second part shall not be responsible for any diminution of the trust estate resulting from depreciation of the said securities or property in which it shall have been invested in good faith, and that it shall be responsible only for fraud or willful misconduct of the party of the second part, its officers or agents."
The trustee says that the agreement is controlling to the extent of $5,000 of the trust fund and that it is specifically released from any liability for depreciation of the securities which it then held, or other property in which it might invest the trust funds, and that its only responsibility, is to refrain from acts of fraud or willful misconduct. It asserts that its duty was to invest the sum of $5,000 in legal trust investments; *Page 86 
and in observing such duty it then could be held only for loss arising through fraud or willful misconduct. It contends further that the fourth, fifth and sixth exceptions to the account relate to investments and securities other than bonds and mortgages which were legal investments under the laws which existed when the investments were made in 1927. To sustain its contention, it directs attention to the provisions of the Revised Statutes of1937, sec. 3:16-1, authorizing investments in municipal bonds, and to sec. 3:16-2 authorizing investments in trust mortgages and participation certificates. Sec. 3:16-2, in part, reads:
"A fiduciary whose duty it may be to loan moneys intrusted to him may, in addition to other investments allowed by law and subject to the conditions contained in section 3:16-3 of this title, invest the same in:
a. Shares or parts of bonds secured by mortgage or bonds secured by trust mortgage, and
b. Participation certificates or coupon bonds which entitled the holder to a proportionate share in a series or number of mortgages and bonds, or extensions or renewals thereof, deposited under a trust agreement with a trust company, a bank or title guarantee corporation organized under the laws of this state, or a national bank authorized to do business in this state."
The trustee estimates the investments which are questioned at the sum of $5,000, while the exceptants charge that such investments amount to $5,500. The latter sum appears to be the correct amount.
The trust company does not deny the allegation of the exceptants that it failed to segregate or ear-mark the investments to distinguish the $20,000 trust fund from the alleged $5,000 fund.
The agreement of May 1st, 1920, fixes the trust fund at $25,000, and sets it up as a single trust. It fails to provide for a separate $5,000 fund. The securities excepted to were not purchased until the year 1926. If it had been the intention of the trustee to set up a separate trust for the $5,000 fund, the time to have done so was when the alleged trust was supposed to have been created on May 1st, 1920; but, as above expressed, it nowhere appears that a separate trust was formed. Again, the two sums of $20,000 and $5,000 are *Page 87 
regarded as a single fund in the accounts filed by the trustee. There is no question in my mind that the $20,000 and the $5,000 funds were inexplicably intermingled. The situation thus created brings the case within the principles stated by the court inMcCullough's Ex'rs v. McCullough, 44 N.J. Eq. 313;14 Atl. Rep. 123, 642. On this point, section 1793 of Scott onTrusts appears to control; it reads:
"It is clear also that where the trustee's failure to ear-mark the trust investments has made it doubtful what investments had been made for the trust and what investments had been made for his own account, he will not be permitted to elect to the trust those investments which have proved unprofitable."
The agreement of May 1st, 1920, clearly sets forth the trustee's limitations. It recites that the sum of $25,000 in securities has been set aside and it provides that the trustee "shall continue to hold said securities as trustee under thelast will and testament of Andrew S. Buckelew, and codicilsthereto annexed." (Italics mine.) There is nothing ambiguous about this last quotation. The trustee, when it became a party to the trust agreement, learned therefrom its powers and limitations. Gilmore v. Tuttle, 32 N.J. Eq. 611, reversed on other grounds, 36 N.J. Eq. 617; Conover v. Guarantee TrustCo., 88 N.J. Eq. 450; 102 Atl. Rep. 844; Weinstein v. Sheer,98 N.J. Law 511; 120 Atl. Rep. 679.
The trust company's voluntary departure from the line of investments directed by the testator finds no support in the decisions of the courts in this state. In re Shaw's Estate,122 N.J. Eq. 536; 195 Atl. Rep. 525; Brewster v. Demarest, 48 N.J. Eq. 559; 23 Atl. Rep. 271; Gates v. Plainfield Trust Co.,121 N.J. Eq. 460; 191 Atl. Rep. 304; affirmed, 122 N.J. Eq. 366;194 Atl. Rep. 65.
The failure of the trustee to register the purchased bond is considered in In re Yost's Estate, 316 Pa. 463;175 Atl. Rep. 383; and in Porter v. Woodruff, 36 N.J. Eq. 174. These cases do not approve the trustee's conduct.
Trustee should follow implicitly the instructions expressed in the trust instrument. 65 C.J. 808; In re Shaw's Estate, supra. *Page 88 
The master to whom the exceptions were referred by the Orphans Court said:
"It will be noticed that the will provides that investments be made on bond and mortgage. On April 1st, 1927, the trustee purchased for the trust fund participation certificate of the County Guaranty Mortgage Company. I feel bound by the case In reShaw Estate, supra, which holds that the direction to invest in bond and mortgage prohibits investment in participation certificates. See, also, Ross v. Savings Investment and TrustCo., supra.
"The trustee invested in the borough of Barrington bond in 1926. Again the case of In re Shaw Estate, supra, is directly in point. * * *"
In the case of Ross v. Savings Investment and Trust Co.,120 N.J. Eq. 87; 184 Atl. Rep. 183; affirmed, 123 N.J. Eq. 288;197 Atl. Rep. 59, the court in considering the rights of a holder of a participation certificate, in part, said:
"The certificate of the New York Title and Mortgage Company, series F-1, `sells and assigns to the registered holder hereof an undivided co-ordinate share of the same amount in the principal sum secured by the bonds and mortgages or in the money secured to the company in the bonds and mortgages deposited, or which may hereafter be deposited by the company with the Bank of Manhattan Trust Company successor by merger to American Trust Company.' It provides that it is one of a series of like tenor issued to an amount not exceeding in the aggregate the principal sum secured by the bonds and mortgages deposited, `or which may hereafter be deposited,' under the terms of an agreement therein referred to, and discloses that the guaranty company has entered into an unconditional promise to pay within ten years from the date of the certificate the principal sum secured and accrued interest. It transfers to the holders an interest in the deposited mortgages as collateral security for its debt, and provides that the company may within three years after the first interest day pay the holder on sixty days' notice in writing the principal sum and interest. I am of the opinion that such certificate does not constitute the holder thereof an owner of a part or share in a bond and mortgage * * *." *Page 89 
The language of the court in the Ross Case applies with equal force to the investments made by the trustee in gold bonds in the instant case. A duty is imposed upon a trustee to make a careful and complete investigation of the securities it proposes to purchase for a trust fund; and if it fails to exercise ordinary care in the circumstances, it then subjects itself to liability to the extent of any investments it may make. Tuttle v.Gilmore, 36 N.J. Eq. 617; Wild v. Brown, 120 N.J. Eq. 31;183 Atl. Rep. 899; In re Ward's Estate, 121 N.J. Eq. 555;192 Atl. Rep. 68; affirmed, 121 N.J. Eq. 606; 191 Atl. Rep. 772; Gilbert
v. Kolb, 85 Md. 627; 37 Atl. Rep. 423; In re Hart's Estate,203 Pa. 480; 53 Atl. Rep. 364; In re Young's Estate, 249 A.D. 495;293 N.Y.S. 97; affirmed, 10 N.E. Rep. 2d 541; In reDalsimer's Estate, 251 A.D. 358; 296 N.Y.S. 209; see Ross v.Savings Investment and Trust Co., supra.
There is no evidence to indicate that before purchasing, this trustee made any investigation as to the value and soundness of the securities in which it invested, nor of the stability of the companies which sold them. The fact that the president and secretary of Freehold Trust Company, the original trustee, were either stockholders or directors of the Monmouth Title and Mortgage Guaranty Company, should have caused the trustee to refrain from investing in the securities of the Monmouth Title and Mortgage Guaranty Co.
Shanley's Estate v. Fidelity Union Trust Co.,5 N.J. Mis. R. 783; 138 Atl. Rep. 388, condemns the practice of officials of one company who are interested in another company, purchasing for a trust estate securities from the company in which they are interested. Vice-Chancellor Backes in that case stated: "They represent both buyer and seller. * * * They are our trustees, and the law demands of trustees the utmost fidelity."
It is the duty of a trustee to use every reasonable effort to inform itself as to the value and the soundness of the trust investments and to keep a careful check of fluctuating values. If it be in doubt in a situation then it behooves it to seek instructions from the court as to its course of action in the premises. *Page 90 
"The trustee also owes the cestui the duty of examining and checking the lawful investments periodically throughout the life of the trusteeship. He cannot assume that, if they are legal and proper for retention at the beginning of the trust, they will remain so indefinitely. They may depreciate in character and fall below the standard fixed by the use of ordinary care or by the statute, the settlor or the court. The trustee must keep in touch with interest and dividend records, property variations, the market price of securities, and all other factors which bear upon the desirability of the investment * * *. If he holds a mortgage on real estate where the margin was adequate at the beginning of the trust, he cannot assume that this condition will necessarily continue throughout the trust. He should keep in touch with the general real estate market in the vicinity of the mortgaged property * * *." (3 Bogert, Trusts Trustees, § 685.)
Where a trustee acts in good faith and exercises reasonable care and diligence in the observance of its duties, it is not liable for losses. In re Corn Exchange National Bank and TrustCo., 109 N.J. Eq. 169; 156 Atl. Rep. 455; Woodruff v. FreeholdTrust Co., 112 N.J. Eq. 405; 164 Atl. Rep. 411; affirmed,116 N.J. Eq. 597; 174 Atl. Rep. 707; In re Pettigrew, 115 N.J. Eq. 401; 171 Atl. Rep. 152; In re Megargee's Estate, 117 N.J. Eq. 347; 175 Atl. Rep. 808; In re Cross, 117 N.J. Eq. 429;176 Atl. Rep. 101. "The trustee may retain safe investments only so long as they remain safe." Wild v. Brown, supra; Babbitt v.Fidelity Trust Co., 72 N.J. Eq. 745; 66 Atl. Rep. 1076.
Under all the circumstances I conclude that the action of the Monmouth County Orphans Court in confirming the master's report sustaining the fourth, fifth and sixth exceptions to the account of appellant should be affirmed. *Page 91